**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────────

MCCORMICK 103, LLC,

                    Plaintiff,

v.                                                    1:25-cv-00944 (AMN/TWD)

GREG BEECHE, LOGISTICS, LLC & GREG
LOGISTICS, LLC,

                    Defendants.

────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BUCHANAN INGERSOLL & ROONEY P.C.** | **CHRISTOPHER P. SCHUELLER, ESQ.** |
| Union Trust Building | |
| 501 Grant Street, Suite 200 | |
| Pittsburgh, Pennsylvania 15219 | |
| | |
| 50 S. 16th Street – Suite 3200 | **MARK PFEIFFER, ESQ.** |
| Philadelphia, Pennsylvania 19102 | |
| *Attorneys for Plaintiff* | |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

### I.    INTRODUCTION

On July 17, 2025, Plaintiff McCormick 103, LLC commenced this diversity action pursuant to 28 U.S.C. § 1332(a)(1) against Greg Beeche, Logistics, LLC ("GBL"), Greg Logistics, LLC ("GL"), Gregory L. Beeche, and the New York State Department of Taxation and Finance, alleging various causes of action under New York State law based upon purported defaults on millions of dollars in loan agreements.  *See generally* Dkt. No. 1 ("Complaint").  The next day, Plaintiff filed an emergency motion pursuant to Fed. R. Civ. P. 66 seeking the immediate

appointment of a receiver over GBL and GL, as well as the real estate of Gregory Beeche. Dkt. Nos. 5-6 ("Motion"). At the Court's request, on July 23, 2025, Plaintiff filed a second motion clarifying that its request for the appointment of a receiver was not being made on a temporary or *ex parte* basis, *see* Dkt. No. 9, and accordingly Plaintiff subsequently filed proof that it had served all original defendants in accordance with Fed. R. Civ. P. 65(a), *see* Dkt. Nos. 11-12.

Following the effectuation of service, the Court issued an expedited briefing schedule directing the original defendants to respond to the Motion by July 30, 2025, and further directing that the parties appear for a hearing on the Motion on August 1, 2025. *See* Dkt. No. 13.[1] The original defendants failed to respond to the Motion by the July 30 deadline and failed to appear for the August 1 hearing, which the Court held with only Plaintiff's counsel. *See generally* docket sheet.

On August 6, 2025, Plaintiff amended the Complaint to, *inter alia*, remove Gregory Beeche and the New York State Department of Taxation and Finance as parties to the action based on Gregory Beeche's July 31, 2025 filing of a petition for voluntary bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. *See* Dkt. No. 23 ("Amended Complaint"). Alongside the Amended Complaint, Plaintiff filed a letter motion and proposed order, which clarified that Plaintiff now seeks the appointment of a receiver over only GBL and GL (hereinafter, "Defendants"). *See* Dkt. No. 25.

To date, Defendants have not appeared in this action or responded to the Motion. Nevertheless, for the following reasons, the Court grants the Motion in part.

---

[1] On July 29, 2025, Plaintiff filed affirmations of service which affirmed that Defendants were served the previous day with copies of the Court's order setting the expedited briefing schedule and hearing. *See* Dkt. Nos. 14, 15.

## II.    BACKGROUND

### A.  The Parties

Plaintiff is a Maryland limited liability company with its principal place of business located in Hunt Valley, Maryland.  *See* Dkt. No. 23 at ¶ 1.  The sole member of Plaintiff is McCormick Holdings, LLC, another Maryland limited liability company, and the sole member of McCormick Holdings, LLC is Beltway Capital, LLC, also a Maryland limited liability company.  *Id.*  Beltway Capital, LLC has "dozens of members" in its chain of ownership who are investors in Plaintiff and citizens of Maryland, Florida, Pennsylvania, Georgia, and Washington D.C.  *Id.* at ¶ 5.

Defendants are New York limited liability companies in the business of providing scaffolding and other equipment to construction sites throughout the country with principal places of business in Waterford, New York.  *Id.* at ¶¶ 2-3.  According to Plaintiff, "[u]pon information and belief, the only members of GBL and GL are Gregory L. Beeche . . . and his son Kirk Beeche," both of whom are domiciled in New York.  *Id.* at ¶ 4.

### B.  The Complaint

#### i.  The Loan Agreements

Plaintiff alleges that, on or about April 20, 2017, Defendant GBL executed and delivered a loan agreement for a line of credit in the amount of $4,000,000.00 and a term loan in the principal amount of $1,350,000.00 to non-party Bank of America, N.A., the terms and conditions of which are governed by a security agreement dated April 13, 2017.  *See id.* at ¶¶ 8-9; *see also* Dkt. No. 23, Ex. A ("First Loan Agreement"), Ex. B ("Security Agreement").  On or about November 8, 2017, GBL executed and delivered an amendment to the First Loan Agreement to add a $2,500,000.00 line of credit which converted to a term loan to non-party Bank of America, N.A. *Id.* at ¶ 10; *see also* Dkt. No. 23, Ex. C ("Second Loan Agreement").  Defendant GL personally

guaranteed all debts of Defendant GBL to Bank of America, N.A.  *Id.* at ¶ 11; *see also* Dkt. No. 23, Ex. D ("Guaranty").

On or about June 2, 2025, effective as of May 21, 2025, Bank of America, N.A. assigned all its right, title, and interest to and under the loan agreements to Plaintiff.  *Id.* at ¶ 12. Accordingly, Plaintiff asserts that it is now the owner and holder of the loan agreements and that its interest in the collateral securing the agreements, which includes the "personal property" of Defendants, remains perfected.  *Id.* at ¶¶ 13-16.

### ii.  The Defaults

Plaintiff asserts that Defendants are in default under the loan agreements due to, *inter alia*, their failure to make any payments since October 2023.  *Id.* at ¶¶ 17-19.  On May 17, 2024, May 5, 2025, and May 25, 2025, Plaintiff sent letters to Defendants (1) advising them of the defaults; (2) accelerating the loans; and (3) demanding full payment.  *Id.* at ¶ 21; *see also* Dkt. No. 23, Ex. G ("Notices of Default").  Plaintiff alleges that all conditions precedent to Plaintiff bringing the instant lawsuit under the loan agreements have occurred, been performed, or been waived, that the defaults are continuing, and that Plaintiff is accordingly entitled to all amounts due and owing under the loan agreements, in addition to the payment of its attorneys' fees and other expenses. *Id.* at ¶¶ 22-25.  Specifically, as of July 14, 2025, Plaintiff asserts that the First Loan Agreement has an outstanding principal of $6,550,000.00 and interest of $879,660.70, and the Second Loan Agreement has an outstanding principal of $323,989.98 and interest of $47,039.15.  *Id.* at ¶ 30.

### iii.  Causes of Action

Based on Defendants' alleged defaults, Plaintiff brings two causes of action under New York State law.  First, Plaintiff brings a cause of action for breach of contract, seeking a money judgment, arguing that Defendants are liable for all amounts due and owing under the loan agreements.  *Id.* at ¶¶ 28-32.  Second, Plaintiff brings a cause of action for replevin, arguing that

Plaintiff is entitled to the "possession of the [Defendants'] Personal Property and to proceed with a sale of that Personal Property pursuant to Article 9 of the New York Uniform Commercial Code." *Id.* at ¶¶ 33-35.

### C. The Motion

As discussed in more detail below, at the August 1, 2025 hearing on the Motion, counsel for Plaintiff advised the Court that Gregory Beeche had filed a petition for voluntary bankruptcy the day prior, triggering the automatic stay provision in 11 U.S.C. § 362. Accordingly, Plaintiff now seeks the immediate appointment of a receiver over only GBL and GL to, *inter alia*, (i) take possession, custody and control of those Defendants' assets, subject to all existing liens, claims, and encumbrances; and (ii) perform all acts reasonable and necessary to manage, protect, and preserve such assets. *See* Dkt. No. 5 at 3.[2] The Motion argues that this appointment is necessary for several reasons.

First, Plaintiff cites certain provisions from the loan agreements that contemplate the appointment of a receiver and argues that, given those provisions, "Defendants agreed to the appointment of a receiver after default." Dkt. No. 6 at 11. Specifically, Section 6 of the Security Agreement governing the First Loan Agreement states that "[i]n the event of any default, the Bank may . . . [h]ave a receiver appointed by any court of competent jurisdiction to take possession of the Collateral. The Pledgor hereby consents to the appointment of such a receiver and agrees not to oppose any such appointment." Dkt. No. 23, Ex. B at 5-6.[3]

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[3] The Motion mistakenly asserts that this provision is present in the First Loan Agreement itself. *See* Dkt. No. 6 at 11.

Second, Plaintiff contends that the collateral securing the loan documents is at risk of being lost, concealed, diminished, or squandered based on, *inter alia*, Defendants' purported deteriorating financial position, as well as Defendants' alleged failure to properly manage business operations. Plaintiff asserts that Defendant GBL's most recent financial reporting shows that it is currently operating with millions of dollars in annual net losses and over $1 million in unpaid payroll. Dkt. No. 6 at 6. Moreover, in July 2024, two confessions of judgment were entered against Defendants and Gregory Beeche in the New York State Supreme Court, Saratoga County by judgment creditors, for $1,235,225.00 and $1,602,255.00, respectively. *Id.* at 7. Despite these difficulties, Plaintiff asserts that Defendant GBL's management has not contained GBL's overhead expenses, "which have skyrocketed over 190.85%." *Id.* at 13. Plaintiff characterizes this as "an emergency-level liquidity crisis." *Id.* at 12. And while Plaintiff alleges that "Defendants themselves confess that they cannot continue operating past August of 2025," *id.*, it also alleges that Defendants are not actively running a sale process, *id.* at 13. Instead, Plaintiff avers that there may be an interested buyer in Defendant GBL, but Defendants have failed to provide the buyer with financial information that the buyer requested. *Id.*

Third, Plaintiff argues that a money judgment would constitute inadequate recourse "because of the delay in obtaining a judgment and the limited execution options available to a judgment creditor." *Id.* at 14. More specifically, Plaintiff contends that, because "GBL is on the verge of going out of business[,] Plaintiff needs to protect its collateral before it is too late" and that "[t]here is a material benefit here to the Plaintiff to have a receiver appointed instead of waiting to obtain and enforce a judgment." *Id.* at 14-15.

Fourth, Plaintiff claims that it is likely to succeed on the merits of its claims since "[t]he Loans are indisputably in default" and because "Defendants have no valid defenses to these defaults." *Id.* at 15.

Finally, Plaintiff contends that there is a strong risk that the sole members of Defendants, Gregory Beeche and Kirk Beeche, are engaged in fraudulent conduct that would persist in the absence of a receiver. Plaintiff claims that they are concealing pertinent financial records from Plaintiff and, since 2022, have failed to produce any audited financial statements, relying exclusively on internally prepared financial data. *Id.* at 5-6, 15. Plaintiff additionally asserts that the value of certain equipment listed in Defendant GBL's financial records does not match the findings of an appraisal report Plaintiff recently obtained. *Id.* at 8. Moreover, Plaintiff argues that, despite Defendant GBL's $1 million in unpaid payroll, the Beeches have been repaying themselves wages that they contend they are owed but have refused to provide Plaintiff with an accounting of these payments or any documentation supporting these payments. *Id.* at 15. Plaintiff posits that "[t]hese are likely fraudulent conveyances or improper dividends from an insolvent entity." *Id.*

### D. The Hearing on the Motion

At the August 1, 2025 hearing on the Motion, the Court inquired with Plaintiff's counsel as to their efforts to communicate with Defendants, Gregory Beeche, or counsel for Defendants or Gregory Beeche. In response, Plaintiff's counsel indicated that they have been in contact with an attorney who previously represented Defendants in unrelated litigation, and that attorney indicated to Plaintiff's counsel that he may ultimately represent Defendants in this litigation but has not yet been retained to do so. Moreover, this attorney allegedly indicated to Plaintiff's counsel as late as July 30, 2025 his understanding that Defendants are unlikely to oppose the Motion.

As previously mentioned, Plaintiff's counsel also notified the Court of Gregory Beeche's recent personal bankruptcy filing, which grants him the protection of the automatic stay provision

in 11 U.S.C. § 362.[4]  Accordingly, Plaintiff chose to remove Gregory Beeche as a party to the action, and now seeks the appointment of a receiver only with respect to Defendants GBL and GL, which are not subject to the automatic stay.  *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2d Cir. 2000) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants").[5]

The Court additionally discussed whether, given Defendants' non-appearance in this matter thus far, it would be appropriate for the Court to exercise its discretion and consider granting the relief sought in the Motion on a temporary basis, which Plaintiff did not oppose.  In that regard, the Court inquired as to the appropriate scope of the potential temporary receiver's authority and noted its hesitancy to appoint a temporary receiver with the wide-ranging authority originally proposed by Plaintiff.  *See* Dkt. No. 5-1.  In response, Plaintiff agreed to submit a revised proposed order, which it filed on August 6, 2025 along with the Amended Complaint.  *See* Dkt. No. 25-1.

## III.    STANDARD OF REVIEW

Fed. R. Civ. P. 66 "govern[s] an action in which the appointment of a receiver is sought." "Whether a federal court should appoint a receiver in a diversity action is governed by federal law."  *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y.

---

[4] The Court has independently confirmed that Gregory Beeche filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code in the Northern District of New York on July 31, 2025.  *See In re Gregory L. Beeche*, Case No. 25-10879-1 (N.D.N.Y. 2025).

[5] On August 6, 2025, Plaintiff's counsel filed a status report with the Court asserting that the appointment of a receiver over Defendants would not violate the automatic stay afforded to Gregory Beeche.  *See* Dkt. No. 24.  In that regard, and without any position from Defendants on the issue, the Court agrees.  While courts may extend an automatic stay to non-debtors under certain circumstances, *see Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003), "[b]ased on the limited information available to [it], the Court cannot conclude that such a circumstance exists," *Xue Hui Zhang v. Ichiban Grp., LLC*, No. 1:17-CV-148, 2018 WL 3597632, *4 (N.D.N.Y. July 26, 2018) (noting that extending automatic stays to non-debtors happens only under "unusual circumstances").

2012) (citing *Varsames v. Palazzo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)).  "A '[r]eceiver acts

only as an agent of th[e] [c]ourt, and his fiduciary duty is to act in the best interests of the

receivership property,' not in the best interests of any other party."  *KeyBank Nat'l Ass'n v.

Monolith Solar Assocs. LLC*, No. 1:19-CV-1562, 2020 WL 1157650, *2 (N.D.N.Y. Mar. 10, 2020)

(quoting *Lawsky v. Condor Capital Corp.*, No. 14-CV-2863, 2015 WL 4470332, *11 (S.D.N.Y.

July 21, 2015)).  Appointing a receiver is considered an "'extraordinary remedy and . . . should be

employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the

property.'"  *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland

(CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (quotation marks omitted)).  "[A] decision to appoint

or not to appoint a receiver is committed to the sound discretion of the trial court."  *Varsames*, 96

F. Supp. 2d at 365 (citing *Rosen*, 106 F.3d at 34).  In making such a decision, courts analyze the

following factors:

> [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the
> property being lost, concealed, injured, diminished in value, or squandered; [3] the
> inadequacy of the available legal remedies; [4] the probability that harm to [the]
> plaintiff by denial of the appointment would be greater than the injury to the parties
> opposing appointment; and [5], in more general terms, [the] plaintiff's probable
> success in the action and the possibility of irreparable injury to his interests in the
> property.

*Id.* (quoting 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983

(1999)).  Courts also consider whether there exists a contractual provision authorizing the

appointment of a receiver.  *See Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 11651639,

at *2 (E.D.N.Y. Apr. 26, 2010) (citing cases).

## IV.    DISCUSSION

### A.  Whether a Receiver is Warranted

      While Defendants have not yet appeared in this action and have not filed any opposition,

"this is not a dispositive factor.  If anything, Defendants' non-appearance still requires this Court

to ensure its decision rests on a robust record." *Neli Int'l Inc. v. Premier Restaurant Grp., LLC*, No. 23-cv-02725, 2023 WL 3412771, at *4 (S.D.N.Y. May 12, 2023); *see also Roku Inc. v. Individuals, Corps., Ltd. Liab. Corps., P'Ships, & Unincorporated Ass'ns*, No. 22-cv-00850, 2022 WL 1598208, at *2 (S.D.N.Y. May 20, 2022) (plaintiff must establish entitlement to injunctive relief by a clear showing even "where defendants have not appeared and the motion . . . is unopposed."). Even in Defendants' absence, on the record currently before it, the Court finds that the factors above weigh in favor of the appointment of a temporary receiver.

### i. Provisions in the Loan Documents

The Second Circuit has affirmed the appointment of a receiver where an agreement between the parties contemplates that the plaintiff may apply for such appointment upon an event of default. *See Nyland*, 839 F.3d at 97 (where it was "undisputed" that several events of default had occurred, the existence of such a provision "strongly support[ed] the appointment of a receiver."). While such provisions are seen most frequently in the context of mortgage agreements, courts have also interpreted the rule to apply where defendants default under other types of agreements containing similar clauses. *See, e.g., D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F. Supp. 2d 481, 490-91 (S.D.N.Y. 2008) (default occurring under financing agreements and corresponding security agreement encompassing certain business collateral including accounts, inventory, investment property, intellectual property, and fixtures); *Neli Int'l Inc.*, 2023 WL 3412771, at *5 (default occurring under loan and guaranty agreements secured by LLC's business assets and operating companies).

Here, the Security Agreement governing the First Loan Agreement contains a clause that permits the appointment of a receiver in the event of default and, notably, waives Defendants' right to oppose such an appointment. *See* Dkt No. 23, Ex. B at 5-6 ("The Pledgor hereby consents to the appointment of such a receiver and agrees not to oppose any such appointment."). While the

presence of this language "does not [] dispose of the Court's inquiry in plaintiff's favor," it serves as persuasive evidence that a receiver should be appointed. *D.B. Zwirn*, 550 F. Supp. 2d at 491 ("the existence of such language, presumably negotiated between the parties, is a factor militating in plaintiff's favor"); *see also Greystone Bank v. Tavarez*, No. 09-CV-5192, 2010 WL 11651639, at *2 (E.D.N.Y. Apr. 26, 2010) ("A contractual provision authorizing the appointment of a receiver also weighs in favor of granting an application for a receivership under federal law.") (citations omitted).[6] And while Defendants' failure to respond to the Motion has left the record devoid of their position regarding the alleged defaults, the Court nevertheless finds that the documentary evidence submitted by Plaintiff adequately supports a finding that Defendants have defaulted.[7] For one, Defendant GBL's internal financial statements indicate that GBL has been operating with millions of dollars in net losses for at least the past two fiscal years. *See* Dkt. No. 6, Exs. N (over $6.5 million in net losses), O (over $3.5 million in net losses). This is in contrast to GBL's financial position in 2023, where it reported over $750,000 in positive net income, indicating a recent and sharp decline in income. *Id.*, Ex. M. Moreover, documents from the New York State Supreme Court indicate that at least two confessions of judgment were issued against Defendants and Gregory Beeche in July 2024, totaling almost $3 million. *Id.*, Exs. P, Q.[8] Plaintiff also attests

---

[6] Indeed, courts have shifted the burden of persuasion onto the defendants where an agreement's receivership clause includes language showing that the defendants explicitly consented to the appointment. *See, e.g.*, *Fannie Mae v. 204 Ellery St., LLC*, No. 23-CV-5343, 2024 WL 2939179, at *3 (E.D.N.Y. Apr. 23, 2024). Thus, the consent language contained in the Security Agreement may indicate that *Defendants* ultimately bear the burden of persuasion in showing why a receiver should *not* be appointed, further supporting the Court's decision to appoint a temporary receiver notwithstanding Defendants' non-appearance.

[7] In reaching this conclusion, the Court does not rely on the communications between Plaintiff's counsel and potential counsel for Defendants with respect to whether or not Defendants would be likely to oppose the Motion.

[8] While it appears that Gregory Beeche attempted to contest one of the confessions of judgment by filing a motion to vacate, he voluntarily withdrew such motion without explanation on June 4,

that a representative of Defendants admitted to Plaintiff on a June 2025 telephone call that GBL has over $1 million in unpaid payroll on its books and that the business will be unable to operate beyond August 2025.  *See* Affidavit of Jeremy Halverson, Vice President of Beltway Capital Management, LLC, Dkt. No. 6-1 ("Halverson Aff.") at ¶¶ 15, 22; *see also Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (holding that courts may consider hearsay evidence on motions for preliminary injunction).  Collectively, this evidence is adequate to demonstrate that Defendants are in a dire financial position, and creates a sufficient showing that they have defaulted on the loans as Plaintiff alleges.  *See* Dkt. No. 23, Ex. G (Notices of Default); *Wilmington Tr., Nat'l Ass'n, as Trustee for the benefit of the Registered Holders of BBCMS Mortg. Tr. 2022-C15 Comm. Mortg. Pass-Through Certificates, Series 2022-C15 v. Aevri Salina Meadows, LLC*, 23-Civ-8824, 2023 WL 8111795, at *3-4 (S.D.N.Y. Nov. 22, 2023) (holding that contractual provisions accounting for the appointment of a receiver in the event of default, alongside detailed allegations and supporting documents from plaintiff evidencing that various defaults occurred, "strongly support[ed] the appointment of a receiver" notwithstanding defendants' non-appearance).

Therefore, the Court finds that this factor strongly weighs in favor of appointing a receiver.

### ii. Fraudulent Conduct

Plaintiff alleges that "[t]he risk is very high that Defendants and the Beeches have engaged in fraudulent conduct."  Dkt. No. 6 at 15.  In support, Plaintiff cites a report from its appraiser that evidences an approximately $11 million delta in the value of Defendant GBL's physical equipment as outlined in their internal financial statements and the value of the equipment that the appraiser

---

2025.  *See William J. Cade v. Gregory L. Beeche, Greg Beeche Logistics, LLC and Greg Logistics, LLC*, Index No. EF20242275 at NYSCEF Doc. No. 31 (N.Y. Sup. Ct. June 4, 2025).

was able to locate during a recent site visit.  *Id.*; *see also id.*, Ex. R (appraiser report).  Based on

that "disconnect between the equipment that can be verified and the equipment on the books of

GBL," Plaintiff contends that "*[p]robably*, the Defendants have diverted the equipment in some

manner and have fraudulently inflated the existence and value of the equipment on the balance

sheet."  *Id.* (emphasis added).  Additionally, Plaintiff alleges that, despite the $1 million in unpaid

payroll that Defendants have admitted to Plaintiff is outstanding, Gregory Beeche and his son

(Defendants' sole members) continue to pay themselves for money they contend that they are

owed.  *Id.*  Plaintiff states that these payments are "*likely* fraudulent conveyances or improper

dividends from an insolvent entity."  *Id.* (emphasis added).

Based on the framing of these allegations, as well as the lack of documentary evidence that

Plaintiff cites to support them, the Court finds, on balance, that they are more speculative than

supported and thus cannot conclude that Plaintiff has made a clear showing that Defendants have

engaged in fraud.  Nevertheless, "evidence of fraud is not required for the appointment of a

receiver."  *Fed. Nat'l Mortg. Assoc. v. 204 Ellery St., LLC*, No. 23-CV-5343, 2024 WL 2939179,

at *3 (E.D.N.Y. Apr. 23, 2024) (citing cases).  "The lack of evidence of fraud does not provide a

basis for denying relief; rather, this factor does not weigh for or against Plaintiff's motion."  *Fed.*

*Nat'l Mortg. Assoc. v. 1488 Bushwick, LLC*, No. 23-CV-4030, 2024 WL 4728666, at *4 (E.D.N.Y.

Nov. 8, 2024).

Therefore, the Court finds that this factor is neutral.

### iii.  Imminent Danger of Property Being Lost, Concealed, Injured, Diminished in Value, or Squandered

"[A] dominant consideration in the appointment of a receiver is the presence of an

imminent or actual irreparable harm or danger to the subject property itself or its value as

collateral."  *Green Mountain Holdings (Cayman) Ltd. v. LV 35 Avenue Corp.*, No. 22-CV-1395,

2023 WL 11984988, at *3 (E.D.N.Y. Nov. 17, 2023).  In the context of appointing a receiver, courts have found imminent danger where the defendants were subject to impending insolvency. *See, e.g.*, *D.B. Zwirn*, 550 F. Supp. 2d at 491-92; *U.S. v. Zitron*, No. 80-Civ-6535, 1990 WL 13278, *2 (S.D.N.Y. Feb. 2, 1990) (quoting Weinstein, Korn & Miller, New York Civil Practice ¶ 5228.04 at 452-466 (1989)) ("[t]he need for a receivership is obvious when . . . leaving the property in the custody of the judgment debtor creates a risk of fraud or insolvency.").  This is akin to the Second Circuit's approach when analyzing other types of requests for injunctive relief, where irreparable harm is found when a defendant is approaching insolvency.  *See, e.g.*, *Brenntag Int'l. Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) (affirming a finding of irreparable harm to plaintiff in light of defendant's insolvency); *see also S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (affirming appointment of receiver in light of defendants' deteriorating financial condition); *Zeltser v. Regal v. World-Wide Holdings*, 111 F.3d 124 (2d Cir. 1997) (affirming injunction based on defendant's likely insolvency); *Pashaian v. Eccelston Props.*, 88 F.3d 77, 87 (2d Cir. 1996) (affirming finding of irreparable harm based on defendant's insolvency).

Here, Defendants' dire financial position, as evidenced by the documents and admissions discussed above, indicates that Defendants are at or near insolvency.  Indeed, according to Plaintiff, Defendants have admitted that the businesses do not even maintain "enough cash flows . . . to [] file a Chapter 11 bankruptcy case or hire an investment banker to run a sale process," strongly implying that Defendants themselves have recognized an inevitable insolvency.  Halverson Aff. at ¶ 22.  Based on the authority cited above, this is sufficient to establish that Plaintiff's collateral is in imminent danger.[9]

---

[9] This conclusion is bolstered by the recent filing of a Chapter 13 bankruptcy petition by one of Defendants' only two members, Gregory Beeche, which states that the "kinds of debts" he has

Therefore, this factor strongly weighs in favor of appointing a receiver.

### iv.  Inadequacy of Legal Remedies

As a general rule, injunctive relief cannot be awarded where a party is claiming a loss that can be adequately remedied by an award of money damages.  *See, e.g.*, *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 12 (2d Cir. 1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d at 70, 72 (2d Cir. 1979).  However, "[i]t is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper."  *Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) (citing *Am. Bd. of Trade, Inc.*, 830 F.2d at 438-39, and then *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985)).

Here, Plaintiff avers that traditional legal remedies would be inadequate based on the length of time it would take for Plaintiff to obtain a judgment and because an award of monetary damages would not afford Plaintiff the "same powers as a receiver."  Dkt. No. 6 at 14.  While the Court finds the latter argument unconvincing, implicit in the former argument is that, by the time a money judgment in this case is entered, Defendants will not be in a sufficient financial position to satisfy it.  *Id.* ("Plaintiff does not have the luxury of time.  GBL's financial condition continues to rapidly deteriorate each day and GBL is on the verge of going out of business.  Plaintiff needs to protect its collateral before it is too late.").  In that regard, the Court agrees.  As noted above, Plaintiff has sufficiently established that Defendants are either at or on the brink of insolvency, continue to incur substantial debts, and have recently had two substantial confessions of judgment entered

---

incurred are "primarily business debts."  *See In re Gregory L. Beeche*, Case No. 25-10879-1, Doc. No. 1 at 7.

against them.  *See* Dkt. No. 6, Exs. P, Q.  Given this, the Court concludes that monetary damages

alone would not constitute an adequate remedy in this case.  *See Brenntag Int'l Chemicals, Inc.*,

175 F.3d at 250 (citing cases) ("[C]ourts have excepted from the general rule regarding monetary

injury situations involving obligations owed by insolvents"); *c.f. Tech. Funding, Inc. v. N. Am.

Corp.*, No. 81-Civ-2578, 1981 WL 770054, at *2 (S.D.N.Y. Oct. 2, 1981) (finding money

judgment was sufficient recourse where "there is no dispute that the defendant is a financially

sound corporation that will be able to satisfy any judgment rendered against it in this action.").

Therefore, this factor similarly weighs in favor of appointing a receiver.

### v. Weight of Injury

The Court next assesses "the probability that harm to plaintiff by denial of the appointment

would be greater than the injury to" Defendants.  *Varsames*, 96 F. Supp. 2d at 365.  In that regard,

Plaintiff posits that "[t]he Defendants are insolvent.  They cannot repay the debts they owe to the

Plaintiff and many other creditors.  Given this insolvency, the Beeches are clearly out of the money

and therefore any lost value in the collateral will be a loss to the Plaintiff and no one else."  Dkt.

No. 6 at 15.  Nevertheless, while the Court strains to discern how Defendants would be harmed by

the appointment of a receiver given their current financial position, Defendants have not provided

the Court with a position on the impact a receivership would have.  As a result, the Court finds

that this factor is neutral.

### vi. Likelihood of Success

Finally, "[l]ike in applications [for] injunctive relief, it is incumbent on the Court to take

an initial review of the underlying legal merits of the claim.  That is, 'in more general terms,' a

court should consider 'plaintiff's probable success in the action[.]'"  *Green Mountain Holdings

(Cayman) Ltd.*, 2023 WL 11984988 at *6 (quoting *Varsames*, 96 F. Supp. 2d at 365).  "'To state

a claim for breach of contract under New York law, the complaint must allege: [1] the formation

of a contract between the parties; [2] performance by the plaintiff; [(3)] failure of defendant to perform; and [4] damages.'" *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 237 (N.D.N.Y. 2021) (additional quotation marks omitted) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).

Even if Defendants had appeared prior to today, the only prongs that could reasonably be in dispute at this juncture are whether Defendants failed to perform under the loan agreements and, if so, the level of damages. In that regard, for the reasons already set forth above, the documentary evidence presented with the Amended Complaint and Motion establish a substantial likelihood that Defendants have defaulted on the loan agreements as Plaintiff alleges. As a default would clearly constitute a breach of those agreements, the Court finds that Plaintiff has established a sufficient likelihood of succeed on the merits of its primary cause of action.

Therefore, this factor also weighs in favor of the appointment of a receiver.

### B.  Receiver's Authority

"A primary purpose of appointing a receiver is to conserve the existing estate." *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964). Receivers are directed to "marshal the assets" of the defendant, *id.*, and "prevent the dissipation of [the] defendant's assets pending further action by the court," *Am. Bd. of Trade, Inc.*, 830 F.2d at 436. The Second Circuit has "'expressed strong reservations as to the propriety of allowing a receiver to liquidate [an estate].'" *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (quoting *Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965)). "In addition, because receivership should not be used as an alternative to bankruptcy, [the Second Circuit has] disapproved of district courts using receivership as a means to process claim forms and set priorities among various classes of creditors." *Id.* (citing *Am. Bd. of Trade, Inc.*, 830 F.2d at 437-38). "More fundamentally, the authority of a receiver is defined by the entity or entities in the receivership. '[T]he plaintiff in his capacity of receiver has

no greater rights or powers than the corporation itself would have.'" *Id.* (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990)). Regardless, a receiver's "authority is wholly determined by the order of the appointing court." *Nyland*, 839 F.2d at 98 (2d Cir. 1988). Thus, courts are permitted to limit the powers of a receiver where appropriate. *See Wilmington Tr., N.A. as Trustee for the Registered Holders of Credit Suisse First Boston Mortg. Sec. Corp. v. 1738 E. 4th St. LLC*, No 23-cv-1270, 2023 WL 7000966, *6 (E.D.N.Y. Sept. 13, 2023) (internal citations omitted); *see also Crites, Inc., v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 413, (1944) ("[O]fficial duties as co-receiver were limited to those conferred upon him by the court").

As discussed with Plaintiff's counsel during the August 1, 2025 hearing, given that Defendants have yet to appear and provide a position on the Motion, and for the reasons set forth above, the Court exercises its discretion to appoint Dolton Melch, of United AMS,[10] as receiver on a temporary basis over Defendants. Mr. Melch (the "Receiver") is authorized (but not obligated) to do any of the following acts until forty-five (45) days from the date of this Order:

1. Take immediate possession, custody, and control of the Receivership Assets and all books and records relating to the Receivership Assets, wherever located. For purposes of this Order, (a) "Assets" means any legal, equitable or beneficial interest in, right to, or claim to any real and personal property, including, without limitation, funds, vehicles, boats, certificates of title, accounts with any Financial Institution (defined below), chattels, choses in action, chattel paper, claims, causes of action against other persons or entities, goods, instruments, equipment, fixtures, general intangibles, intellectual property, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, membership interests in any limited liability company, partnership interests, inheritances, options, contractual rights, interests in any trust, art, collectibles, furnishings, jewelry, personal effects and all cash or money, wherever located; and (b) "Receivership Assets" means Assets of any and every kind whatsoever that are (i) owned, controlled or held by or for the benefit of the Defendants, in whole or in part; (ii) in the actual or constructive

---

[10] The Court concludes that Mr. Melch is qualified to serve as the temporary receiver. Mr. Melch is the co-Founder of United AMS, an Asset Management Service Company, and has specialized experience administering thousands of complex receiverships. *See* Dkt. No. 6, Ex. S (Melch Curriculum Vitae). As such, Mr. Melch is familiar with the duties and responsibilities of a receiver in a situation such as this.

possession of the Defendants, or other individual or entity acting in concert with the Defendants; (iii) held by an agent of the Defendants, including as a retainer for the agent's provision of services; or (iv) owned, controlled or held by, or in the actual or constructive possession of, or otherwise held for the benefit of, any entity directly or indirectly owned or controlled in whole or in part by the Defendants, including Assets that have been transferred to another person or entity but as to which Assets such person or entity does not have a legitimate claim;

2. Take all steps necessary or reasonable to secure all premises owned, rented, leased, or otherwise controlled by the Defendants, which steps may include but are not limited to any of the following as Receiver deems necessary or advisable: (a) photographing and videotaping any or all portions of the premises; (b) securing the premises by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the premises; (c) requiring any persons present on the premises at the time this Order is entered to leave the premises, to provide Receiver with proof of identification, or to demonstrate to the satisfaction of Receiver that such persons are not removing from the premises any Receivership Assets; and (d) employing the assistance of law enforcement officers as Receiver deems necessary to implement the provisions of this Order;

3. Supplant any rights or powers of the Defendants to hold and manage the Receivership Assets;

4. Retain and pay professionals (*e.g.*, counsel, investment bankers, accountants, appraisers, financial advisors, property managers, etc.) ("Professionals") to advise and assist Receiver with management and operation of the Receivership Assets and to protect and preserve the interest and rights of Receiver in fulfilling its duties hereunder, including, without limitation, Professionals that are currently or have previously been engaged by the Defendants;

5. Collect, receive, control, and maintain all accounts receivable, earnings, rents, issues, income, profits, and other revenues and contractual claims that constitute or relate to the Receivership Assets now due and unpaid and that become due during the Receivership;

6. Take and have complete and exclusive control over the Defendants' bank accounts (and all balances and funds therein) and, at the election of Receiver, maintain and utilize the Defendants' deposit accounts (which shall be used exclusively for deposits and disbursements of the revenues and funds of the receivership estate) or open one or more new deposit accounts and direct payors to deposit funds due and owing to the Defendants in such deposit accounts;

7. Obtain any and all financial records, statements, and other documents pertaining to the Defendants from any bank, credit union, savings and loan association, insurance company, or other financial institution (collectively, the "Financial Institutions") (and all Financial Institutions are hereby directed to deliver to Receiver all such financial

records, statements, and other documents pertaining to the Defendants as requested by Receiver);

8.  File a voluntary bankruptcy petition on behalf of the Defendants and act as the debtor in possession in any bankruptcy proceeding;

9.  Continue utilizing the services of any or all of the Defendants' personnel (who shall be subject to Receiver's oversight and authority and shall be answerable solely to Receiver in order to conduct the day-to-day operations of the Defendants);

10. Assume control over and operate the business of the Defendants in such manner and to such extent as Receiver may deem necessary or appropriate, if at all, and pursue and preserve all of the Defendants' claims or interests as Receiver deems to be in the best interest of the receivership estate in Receiver's business judgment;

11. Enter into and reject contracts and leases;

12. Hire and terminate any director, officer, employee, independent contractor, or agent of the Defendants, and to adjust the salaries or compensation of any such persons, all in Receiver's discretion;

13. Take possession of (and the U.S. Postal Service and all courier or delivery services are hereby directed to release to Receiver or its designees) all mail or packages pertaining to the business of the Defendants addressed to the Defendants at any of the Defendants' locations or post office boxes and to open and inspect all such mail and packages to determine whether any items or information contained therein fall within the mandates of this Order;

14. If necessary for the continued operation of the Defendants or the preservation of the Receivership Assets, borrow funds on behalf of the Defendants;

15. Take any action necessary to ensure that all licenses and permits required under federal, state, or local law to operate the Defendants' businesses are maintained;

16. Pursuant to 28 U.S.C. §754, within ten (10) days after the Effective Date, file a copy of the Complaint and this Order in each district where any of the Receivership Assets is located; and

17. Request any supplement or amendment of this Order as may be advisable or appropriate to further the purposes of the Receivership.

The Receiver shall faithfully discharge these duties and obey all further orders of the Court.

Within twenty-one (21) days of the entry of this Order, the Receiver shall file with the Court an

inventory of all property of which he has taken possession or control, together with a list of the

then-known liabilities of Defendants and a report explaining such inventory.  The Receiver shall additionally post a bond with the Court in the amount of $100.00.

Within three (3) business days after entry of this Order, the Receiver shall serve a copy of this Order on Defendants and any person of whom the Receiver is aware that has or may claim to have a lien on or security interest in any of the Receivership Assets.  To the extent that the Receiver discovers the identity of additional such parties subsequently, the Receiver shall serve a copy of this Order on such persons promptly.

On or before September 10, 2025, Plaintiff shall file with the Court and serve upon Defendants a proposed order of permanent receivership for the period during the pendency of this matter and the liquidation of the Receivership Assets.  On or before September 17, 2025, Defendants shall file a written response to the proposed permanent receivership order showing cause as to why the receivership should not be extended on the terms set forth in the proposed order.  If no response is filed, the Court may enter the proposed order of permanent receivership or extend this Order without further notice or hearing.  Notwithstanding the foregoing, Defendants may file a motion, and may seek expedited consideration, to vacate or modify this Order for proper reasons.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's emergency motion for the appointment of a receiver, Dkt. No. 5, is **GRANTED IN PART**; and the Court further

**ORDERS** that Dolton Melch, of United AMS, be appointed as the temporary receiver over Defendants; and the Court further

**ORDERS** that Mr. Melch shall have the powers and duties described herein until forty-five (45) days from the date of this Order; and the Court further

**ORDERS** that Plaintiff shall file with the Court and serve upon Defendants a proposed order of permanent receivership on or before September 10, 2025; and the Court further

**ORDERS** that Defendants shall file a written response on or before September 17, 2025 showing cause as to why the receivership should not be extended on the terms set forth in the proposed order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 8, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge