# EXHIBIT A

Dotan Y. Melech
United AMS, LLC
8350 W. Sahara Ave., Ste. 150
Las Vegas, NV 89117
Ph: (702) 586-7413  Fax: (877) 300-1763
info@unitedams.com
*Court Appointed Receiver*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MCCORMICK 103, LLC,

               Plaintiff,

        v.

GREG BEECHE, LOGISTICS, LLC &
GREG LOGISTICS, LLC,

          Defendants.

_____

**RECEIVER'S SUPPLEMENTAL REPORT
AND EMERGENCY NOTICE DATED
<u>SEPTEMBER 10, 2025</u>**

1:25-cv-00944-AMN-TWD

## I.    <u>INTRODUCTION</u>

This Supplemental Report and Emergency Notice dated September 10, 2025 ("Supplemental Report") is prepared and submitted by Dotan Y. Melech, President of United AMS, LLC, the court-appointed Receiver ("Receiver") pursuant to the Court's Memorandum-Decision and Order dated August 8, 2025, as amended ("Order"). Docket Nos. 28 & 29. This filing supplements the Receiver's Inventory and Liabilities Report dated September 2, 2025, and is submitted to apprise the Court of material developments that now stand in clearer relief, warranting immediate direction and authority.

## II.    <u>RECEIVER'S MATERIAL CONCERNS</u>

In evaluating the current state of Greg Beeche, Logistics, LLC and Greg Logistics, LLC (collectively, the "Receivership Entities"), the Receiver has identified four material concerns that make continued operation impractical.

First, the Receivership Entities have no active insurance coverage. Premiums historically ranged from $80,000 (installment payments) to over $200,000 (down payment) per month, which amounts far exceed the Receivership Entities' estate's ("Receivership Estate") ability to pay and are well beyond its financial capacity. Although Gregory L. Beeche ("Beeche") has suggested that customers with active projects might add the Receivership Entities as additional insureds under their own policies, no documentation has ever been produced to substantiate this suggestion. The Receivership Entities operate in a high risk industry, and the absence of sufficient, verifiable coverage potentially exposes the Receivership Estate to catastrophic risk, which cannot be permitted to continue.

Second, the Receiver cannot confirm that customer contracts are being reliably performed. This is due to the fact that employees were not paid for several months and there are only limited personnel available to execute the work. These conditions create a significant risk that the Receivership Entities are already in breach of contractual obligations, and continuation would only compound these liabilities. Immediate termination of executory contracts is therefore necessary to prevent further exposure.

Third, the Receivership Estate has no liquidity and no certainty of collections. Although records have been turned over, they are outdated by five to six months and do not provide a reliable basis for analysis. The Receiver has no confidence in the information, and without accurate records there is no ability to plan or forecast in a manner necessary to administer the Receivership Estate as a going concern.

Fourth, the workforce and management structure are no longer sufficient to sustain operations. All key managers, including the last project supervisor, have departed, leaving only a small number of part-time personnel who are inadequate to perform ongoing projects. Customers have contacted the Receiver directly expressing concern that work cannot be

completed without qualified staff. In addition, employees and union obligations remain substantially in arrears, and payroll exposure under state labor law continues to grow without any available funds to satisfy it. As a result, the Receivership Entities no longer have any meaningful operational capacity.

Given the foregoing, the Receiver informed both the Plaintiff and the Defendants that payroll stopped accruing beginning Monday, September 8, 2025.

## III.    RECEIVER'S ASSESSMENT & PLAN

The facts now establish that continued operation of the Receivership Entities as a going concern is not feasible and presents risks far exceeding any potential benefit to the Receivership Estate. The Receivership Entities lack liquidity, insurance, qualified personnel, and reliable records, each of which is indispensable to continued operation and the performance of obligations.

The Receiver has carefully evaluated the risks, analyzed the costs of various alternatives, and considered whether sufficient resources could be marshaled to rebuild operations. That analysis confirmed the financial infeasibility of doing so, leaving no viable path forward other than liquidation.

Accordingly, the Receiver believes that the only realistic plan for the Receivership Entities consists of (i) freezing all expenses while earned revenues (excluding deposits) are collected, (ii) ceasing all operations immediately with notice provided to the Court, employees, and customers, and (iii) focusing all efforts on liquidating the Receivership Entities' assets, whether in one sale or in pieces, the proceeds of which would then be distributed to creditors. Thereafter, the receivership should be closed.

The Receiver has communicated this information to Plaintiff and Beeche and notified them of his intent to file this Supplemental Report. On Monday, September 8, 2025, Beeche

requested that the Receiver refrain from filing this Supplemental Report for 48 hours to allow him an opportunity to find a buyer of the Receivership Estate assets. Where Beeche may be of assistance is in helping the Receiver identify and secure a "friendly" buyer for Receivership Entities' assets as soon as possible in order to satisfy creditor claims and bring the receivership to an efficient close. The Receiver has also initiated the process of engaging a qualified auctioneer. If a sale to a "friendly" buyer does not materialize in the coming weeks, the auction process should commence without delay.

## IV.    CONCLUSION

The Receiver respectfully submits this Supplemental Report to apprise the Court of the current status of the Receivership Entities and to advise that the Receiver will take all steps necessary to implement the plan noted above or as directed by the Court in a future permanent receivership order.

Dated this 10th day of September, 2025.

**DOTAN Y. MELECH**
/s/ Dotan Y. Melech
United AMS, LLC
8350 W. Sahara Ave., Ste. 150
Las Vegas, NV 89117