UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

MCCORMICK 103, LLC,

                Plaintiff,

      v.

GREG BEECHE, LOGISTICS, LLC,
GREG LOGISTICS, LLC, and
GREGORY L. BEECHE,                             1:25-cv-00944-AMN-CBF

                Defendants.

—————————————————————————

### MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S EMERGENCY MOTION TO HOLD DEFENDANT, GREGORY L. BEECHE, IN CONTEMPT

 

Respectfully submitted,

PHILLIPS LYTLE LLP
*Attorneys for Dotan Y. Melech, President of*
*United AMS, LLC, Court-Appointed Receiver of*
*Greg Beeche, Logistics, LLC and*
*Greg Logistics, LLC*
3 Winners Circle, Suite 306
Albany, New York 12205
(518) 472-1224

Todd A. Ritschdorff, Esq.
Marc. H. Goldberg, Esq.
– Of Counsel –

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................................................................iii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................2

    A.    Appointment of Receiver .............................................................................2

    B.    The Receiver's Authority.............................................................................2

    C.    The Receiver's Outstanding Requests to Beeche Concerning Receivership Assets .....................................................................................4

        1.    The Server(s) Located at the GBL Facility .......................................4

        2.    The Porsche ......................................................................................7

        3.    Wrongfully Transferred Funds.........................................................7

ARGUMENT ...............................................................................................................8

POINT I     THE RECEIVER HAS ESTABLISHED THAT BEECHE VIOLATED THE PERMANENT ORDER AND IS SUBJECT TO CIVIL CONTEMPT SANCTIONS ............................................................8

    A.    Legal Standard.............................................................................................8

    B.    Beeche Should Be Held in Contempt ..........................................................9

        1.    The Permanent Order Is Clear and Unambiguous ...........................11

        2.    Proof of Noncompliance Is Clear and Convincing...........................12

        3.    Beeche Was Not Reasonably Diligent and Energetic in Attempting to Comply......................................................................12

        4.    Beeche's Defenses Will Be Meritless ..............................................13

POINT II    THE RECEIVER IS ENTITLED TO ATTORNEYS' FEES AND COSTS BECAUSE BEECHE'S CONTEMPT IS WILLFUL.....................14

    A.    Beeche's Contempt Is Willful ....................................................................14

        1.    The Court Should Schedule an Application for the Submission and Determination of the Amount of Attorneys' Fees and Costs the Receiver Is Entitled to Recover ...................................................17

CONCLUSION ............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Nevada, LLC v. Baer,*
No. 21-50-cv, 2022 WL 350255 (2d Cir. Feb. 7, 2022) .................................................. 8

*Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.,*
438 F. Supp. 3d 203 (S.D.N.Y. 2020) ...............................................................15

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
421 U.S. 240 (1975) ...........................................................................................15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,*
522 F.3d 182 (2d Cir. 2008) .............................................................................16

*Blum v. Stenson,*
465 U.S. 886 (1984) ...........................................................................................16

*Casale v. Kelly,*
710 F. Supp. 2d 347 (S.D.N.Y. 2010) ..............................................................12

*CBS Broad. Inc. v. FilmOn.com, Inc.,*
814 F.3d 91 (2d Cir. 2016) ....................................................................... 9, 11, 13

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .................................................................................8, 9, 15, 17

*Cricut, Inc. v. APA Tech. Ltd. Co.,*
698 F. Supp. 3d 538 (E.D.N.Y. 2023) .............................................................10

*Davis v. XPW Wrestling Inc.,*
No. 5:23-CV-675, 2024 WL 3043407 (N.D.N.Y. June 18, 2024) ...................15

*Donovan v. Sovereign Sec. Ltd.,*
726 F.2d 55 (2d Cir. 1984) ............................................................................9, 10

*E.E.O.C. v. Local 638–Local 28 of the Sheet Metal Workers' Int'l Ass'n,*
753 F.2d 1172 (2d Cir. 1985), *aff'd,* 478 U.S. 421 (1986) ..........................9, 13

*Fox Indus., Inc. v. Gurovich,*
No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002 (E.D.N.Y. Sept. 21, 2005) ...........15

*Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.,*
No. 07-CV-8677 (LAP), 2010 WL 4455402 (S.D.N.Y. Oct. 21, 2010) ..........................11

*Gunawan v. Sake Sushi Rest.*,
  897 F. Supp. 2d 76 (E.D.N.Y. 2012) ..........................................................................15

*Huber v. Marine Midland Bank*,
  51 F.3d 5 (2d Cir. 1995)................................................................................ 10, 14

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
  991 F.3d 361 (2d Cir. 2021) ........................................................................... 9

*King v. Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir. 1995) ...........................................................................11

*Levin v. Tiber Holding Corp.*,
  277 F.3d 243 (2d Cir. 2002) ...........................................................................10

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962)........................................................................................ 9

*Luciano v. Olsten Corp.*,
  109 F.3d 111 (2d Cir. 1997) ...........................................................................16

*Maness v. Meyers*,
  419 U.S. 449 (1975)........................................................................................11

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
  885 F.2d 1 (2d Cir. 1989) ........................................................................ 13, 14

*McGlynn v. Cools, Inc.*,
  No. 19-cv-03520 (GBD) (DF), 2020 WL 6561658 (S.D.N.Y. July 1, 2020) .................15

*Millea v. Metro-N. R.R. Co.*,
  658 F.3d 154 (2d Cir. 2011) ...........................................................................15

*N.Y. State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989) .........................................................................10

*Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*,
  289 F. Supp. 2d 373 (S.D.N.Y. 2003)............................................................10

*Next Invs., LLC v. Bank of China*,
  12 F.4th 119 (2d Cir. 2021) ............................................................................11

*NLRB v. Hopwood Retinning Co.*,
  104 F.2d 302 (2d Cir. 1939) ...........................................................................11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ....................................................................... 9, 14

*Perfect Fit Indus. v. Acme Quilting Co.*,
    673 F.2d 53 (2d Cir.1982) .................................................................. 14, 15

*Potts v. Postal Trucking Co.*,
    No. 17-CV-2386 (ARR) (VMS), 2018 WL 794550 (E.D.N.Y. Feb. 8, 2018) ................. 9

*Ex parte Robinson*,
    86 U.S. 505 (1874) ........................................................................... 8

*S.E.C. v. Am. Bd. of Trade, Inc.*,
    830 F.2d 431 (2d Cir.1987) ................................................................. 8

*Shangold v. Walt Disney Co.*,
    No. 03-CV-9522 (WHP), 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ........................ 9

*Shillitani v. United States*,
    384 U.S. 364 (1966) .......................................................................... 8

*Simmons v. N.Y.C. Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009) ............................................................... 16

*Spallone v. United States*,
    493 U.S. 265 (1990) .......................................................................... 8

*Stanczyk v. City of New York*,
    752 F.3d 273 (2d Cir. 2014) ............................................................... 15

*United States v. Petito*,
    671 F.2d 68 (2d Cir. 1982) .................................................................. 8

*United States v. Waterbury*,
    5:18-CV-440 (MAD/TWD), 2021 WL 4304811 (N.D.N.Y. Sept. 22, 2021) .......... 10, 12

*Yates v. United States*,
    355 U.S. 66 (1957) ........................................................................... 8

*Zino Davidoff SA v. CVS Corp.*,
    No. 06-CIV-15332 (JGK), 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008) ................... 12

## PRELIMINARY STATEMENT

Dotan Y. Melech, President of United AMS, LLC, court-appointed receiver ("Receiver") of Greg Beeche, Logistics, LLC ("GBL") and Greg Logistics, LLC ("GL" and together with GBL, the "Receivership Entities"), respectfully submits this memorandum of law in support of his emergency motion by Order to Show Cause ("Motion") to hold defendant, Gregory L. Beeche ("Beeche"), in contempt of this Court's Order Appointing Receiver dated January 30, 2026 ("Permanent Order"[1]). Dkt. No. 63.

Despite the Permanent Order clearly and unambiguously requiring the Receiver, among other things, to take possession, custody, and control of all Receivership Assets, Beeche has, notwithstanding multiple requests, failed, neglected, and/or otherwise refused to turn over to the Receiver the following Receivership Assets, *viz.*, (i) administrator login credentials and passwords for the server(s) located at 356 Hudson River Rd., Waterford, NY 12188 ("GBL Facility"), (ii) any and all data, hardware, or software Beeche removed or caused to be removed from the server(s) located at the GBL Facility, (iii) that certain 2014 Porsche Panamera, VIN WP0BC2A75EL077136, owned by GBL ("Porsche"), and (iv) all funds Beeche transferred or withdrew from GBL's TD Bank, N.A. business checking account on or after August 8, 2025 without authority totaling at least $71,000.00 ("Wrongfully Transferred Funds").

Accordingly, the Receiver respectfully requests that the Court issue an Order (i) finding Beeche in contempt of the Permanent Order, (ii) directing Beeche to turn over to the Receiver the administrator login credentials and passwords for the GBL server(s), any and all data, hardware, or software Beeche removed or caused to be removed from the

---

[1] All defined terms not otherwise defined herein shall have the meaning given to them in the Permanent Order.

server(s) located at the GBL Facility, the Porsche, and the Wrongfully Transferred Funds,

(iii) imposing daily fines until Beeche complies with the Permanent Order, (iv) awarding

damages to compensate the Receiver for the unnecessary costs incurred as a result of

Beeche's willful refusal to comply with the Permanent Order, (v) awarding reasonable

attorneys' fees and costs in an amount to be determined upon application to the Court, and

(vi) granting such other and further relief as the Court deems just and proper.

## STATEMENT OF FACTS

**A.    Appointment of Receiver**

On August 8, 2025, this Court entered its Memorandum Decision & Order, as

amended on August 11, 2025, appointing Mr. Melech as temporary Receiver for the

Receivership Entities ("Interim Order").  Dkt. Nos. 28 & 29.  On January 30, 2026, the

Court issued the Permanent Order appointing the Receiver on a permanent basis.  Dkt. No.

63.

**B.    The Receiver's Authority**

Pursuant to the Interim Order, the Receiver was authorized (but not obligated)

to, among other things, (i) take possession, custody, and control of all Receivership Assets,

and (ii) manage and operate the Receivership Entities' business(es), employ and terminate

personnel, collect income, administer accounts, engage professionals, enter into agreements

as necessary, and, subject to entry of a permanent receivership order, liquidate Receivership

Assets, all for the purpose of securing, preserving, and maximizing the value of the

Receivership Estate.  Dkt. No. 28 at 18-20.

In accordance with the Permanent Order, the Receiver is obligated to, among

other things, take immediate control of all Receivership Assets, wherever located, and

without further Order of the Court the Receiver is authorized to "market, sell or otherwise

dispose of the Receivership Assets, in its entirety or in one or more parcels" as set forth in the Permanent Order.  Dkt. No. 63 ¶ 4(i), (viii).  Paragraph 5 of the Permanent Order provides, in pertinent part:

> Defendants (and, where applicable, Defendants' officers, shareholders, directors, partners, assigns, agents, servants, employees, accountants, and attorneys), all persons and entities claiming by or through Defendants, and all other persons and entities:
>
> (i) shall surrender possession of all of the Receivership Assets to Receiver, of whatever nature and wherever located, whether such Receivership Assets are in the possession of Defendants or any affiliate of Defendants, or any of their officers, directors, partners, shareholders, representatives, professionals, employees, or agents, or any other person or entity, and all of such Receivership Assets shall be, on the Effective Date, placed in custodia legis of the Court;
>
> (ii) shall be enjoined, restrained, stayed, and prohibited from (a) using, possessing, transferring or disposing of any Receivership Assets or negotiating on behalf of the Defendants for any use, possession, transfer or disposition of any Receivership Asset . . . (f) doing any act to interfere with the taking of control, possession, management, or sale by Receiver of any portion of the Receivership Assets . . .;
>
> (iii) shall be required to immediately provide access, means of access, and make available to Receiver all keys, codes, passwords, books, records, computer hardware and software (including all computer programs, data bases, disks, and other media owned or licensed by Defendants or upon which information regarding the property, assets, accounts, and businesses of Defendants are stored, recorded, or located) . . .;
>
> (iv) shall immediately disclose to Receiver the nature, amount, and location of any and all Receivership Assets, including, books, records, computer programs, and media owned by Defendants or connected with businesses of Defendants, and shall immediately be turnover to Receiver all Receivership Assets forthwith;
>
> (v) shall cooperate with Receiver and abide by Receiver's requests for information and documentation so that Receiver may perform Receiver's function with full information and knowledge; and

(vi) shall return any monies taken from the Defendants' deposit accounts on or after August 8, 2025 without the authorization of the Receiver.

*Id.* ¶ 5.

## C.     The Receiver's Outstanding Requests to Beeche Concerning Receivership Assets

The Receiver's requests to Beeche concerning the Receivership Assets that have gone unanswered fall into three categories—the server(s) located at the GBL Facility, the Porsche, and the Wrongfully Transferred Funds.

### 1.     The Server(s) Located at the GBL Facility

On August 21, 2025, the Receiver wrote a letter to the Receivership Entities and Beeche requesting that Beeche make available, among other things, all books/records, banking information, and "**[a]ccess to [c]omputer [s]ystems**, servers, and/or software, including any cloud storage or cloud/remote based programs, intellectual property rights, and websites (with all associated system access information, passwords, alarm codes, keys, keycards, software, or similar items) that may be used in connection with the Receivership estate, wherever located in and whatever mode maintained."  Declaration of Dotan Y. Melech, dated March 6, 2026 ("Melech Decl.") **Ex. A** (emphasis in original).  Despite this request, Beeche never provided full access to the server(s) at the GBL Facility.  *Id.* ¶ 13.

Following a delay in the administration of the Receivership Estate due to Beeche placing GBL in a bankruptcy case under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of New York on October 24, 2025, Case No. 25-11257-1-pgr, and promptly after the Permanent Order was entered, the Receiver renewed his request to Beeche for full access to the GBL server.  *Id.* ¶ 14.  On February 10, 2026, the Receiver directed Mitch Harhay, United AMS, LLC's Chief

Technology Officer, who was onsite at the GBL Facility, to contact Beeche to obtain the administrator login credentials and passwords for the GBL server(s). *Id.* ¶ 15. Although Mr. Harhay spoke with Beeche that day, the administrator login credentials and passwords for the GBL server(s) were not provided. *Id.* ¶ 16.

As a result, on February 10, 2026, the Receiver directed his attorneys, Phillips Lytle LLP, to send Beeche an email ("Turnover Email") requesting the immediate production of the administrator login credentials and passwords for the GBL server(s) and to advise Beeche that if this information was not provided the Receiver would be forced to remove the server drives and ship them offsite to a digital forensic laboratory to extract the data. Beeche was further advised that such an effort would come at a significant cost to the Receivership Estate. *See* Declaration of Todd A. Ritschdorff, Esq. dated March 6, 2026 ("Ritschdorff Decl."), **Ex. 1**. Beeche did not respond to the Turnover Email. *Id.* ¶ 5.

Having received no response, the Receiver instructed Mr. Harhay to remove the drives from the main GBL server at the close of business on February 10, 2026. Thereafter, Mr. Harhay sent the drives to a digital forensic lab where they await data extraction, which will cost more than $15,000.00. Melech Decl. ¶ 19.

On February 13, 2026, the Receiver directed his attorneys, Phillips Lytle LLP, to send Beeche a letter ("Turnover Letter") requesting, among other things, administrator login credentials and passwords for the GBL server(s), as well as any and all data, hardware, or software Beeche removed or caused to be removed from the GBL server(s). Ritschdorff Decl. **Ex. 2**. Beeche did not respond to the Turnover Letter. *Id.* ¶ 5.

On February 20, 2026, the Receiver submitted his Interim Status Report as of that date and noted, among other things:

> [F]ollowing the Receivership Entities' legacy server crash described in the Receiver's Interim Status Report dated October 24, 2025 (Dkt. No. 49), the Receiver determined that much of the data on the servers was salvageable and accessible with administrator login credentials. Despite requesting this information from Gregory L. Beeche and the Receivership Entities' former IT consultant, Thomas Morgan, numerous times—twice since the Order was entered—it was never provided. As a result, the Receiver was forced to remove and ship the servers to a digital forensic lab to extract the data from those servers. Although this extraction is anticipated to cost in excess of $15,000, the Receiver believes it is critical to advance a successful sale process.

Dkt. No. 74-1 Point II(B).

On February 25, 2026, defendants' counsel, Christopher Massaroni, Esq. sent the Receiver's attorneys, Phillips Lytle LLP, an email confirming a phone conversation as follows:

> We explained that our consultant believes that if the forensic lab attempts to access the Beeche server, it will cause further damage and very likely result in the permanent loss of data.
>
> We offered to facilitate the disclosure of passwords and user credentials under certain circumstances . . . .

Ritschdorff Decl. **Ex. 3**.

The Receiver's attorneys responded on February 27, 2026 as follows:

> Neither the Receiver's IT folks nor the forensic lab agree that data extraction will cause further damage or loss. Indeed, the server drives removed from GBL are in a secure environment under optimal storage conditions, and it is estimated that nearly all data on these drives can be successfully extracted. Nevertheless, this confirms that the Receiver has not yet commenced, and is willing to pause for a period of 20 days, data extraction efforts on the drives removed from GBL if Greg immediately and without condition or qualification provides all administrator login credentials and passwords for any and all servers, drives, and software housed in and/or used by GBL, including all physical and cloud storage backups. The Receiver

has requested this information several times, and the Order Appointing Receiver unquestionably requires Greg to provide it.

*Id.* (emphasis added).

Defendants' counsel did not respond to this email.  Ritschdorff Decl. ¶ 7.

### 2.    The Porsche

Based on the Receiver's review of GBL's books and records, and shortly after his appointment, the Receiver identified the Porsche as a Receivership Asset.  Melech Decl. ¶ 25.  As detailed in the Receiver's October 24, 2025 Interim Status Report, the Porsche was a material term of the settlement reached (but not completed) between plaintiff and Beeche whereby Beeche agreed to surrender possession of the Porsche to the Receiver.  *Id*. ¶ 26.  By the Turnover Letter, the Receiver's attorneys demanded that Beeche surrender the Porsche.  Ritschdorff Decl. **Ex. 2**.  To date, Beeche has not surrendered the Porsche.  *Id*. ¶ 28.

### 3.    Wrongfully Transferred Funds

As set forth in the Receiver's Inventory and Liabilities Report Dated September 2, 2025, the Receiver identified the Wrongfully Transferred Funds (Dkt. No. 37-1 **Ex. 3**) as follows:

| Transaction Date | Description | Amount | Running Total of Wrongfully Transferred Funds |
|---|---|---|---|
| 8/11/2025 | Debit to Beeche | $7,500.00 | $7,500.00 |
| 8/13/2025 | Wire Transfer to Beeche | $50,000.00 | $57,500.00 |
| 8/13/2025 | Debit to Beeche | $2,500.00 | $60,000.00 |
| 8/15/2025 | Debit to Beeche | $7,000.00 | $67,000.00 |
| 8/18/2025 | Debit to Beeche | $4,000.00 | $71,000.00 |

Melech Decl. ¶ 31.

The Receiver did not authorize any of these transactions.  *Id.* ¶ 32.  By the Turnover Letter, the Receiver's attorneys demanded that Beeche return the Wrongfully Transferred Funds to the Receivership Estate.  Ritschdorff Decl. **Ex. 2**.  To date, Beeche has not returned the Wrongfully Transferred Funds or provided an accounting of the Wrongfully Transferred Funds.  Melech Decl. ¶ 34.

Despite the Permanent Order and numerous requests to Beeche, he has refused and continues to refuse to turn over the administrator login credentials and passwords for the GBL server(s), the Porsche, and the Wrongfully Transferred Funds.  *Id.* ¶ 35.  Beeche's continued refusal to comply is materially impairing the Receiver's ability to administer the Receivership Estate.  *Id.* ¶ 36.

## ARGUMENT

## POINT I

### THE RECEIVER HAS ESTABLISHED THAT BEECHE VIOLATED THE PERMANENT ORDER AND IS SUBJECT TO CIVIL CONTEMPT SANCTIONS

**A.    Legal Standard**

"[I]t is firmly established that the power to punish for contempt is inherent in all courts."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Ex parte Robinson,* 86 U.S. 505, 510 (1874)).  "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Absolute Nevada, LLC v. Baer*, No. 21-50-cv, 2022 WL 350255, at *2 (2d Cir. Feb. 7, 2022).  "An individual who refuses to obey a valid order is subject to both civil and criminal contempt penalties for the same acts."  *United States v. Petito*, 671 F.2d 68, 72 (2d Cir. 1982) (citing *Yates v. United States*, 355 U.S. 66, 74 (1957)); *see also S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 439 (2d

Cir.1987) ("When a district court's order has been violated, the court may impose either civil contempt remedies or criminal contempt sanctions, or both.").

Courts' inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–631 (1962)); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021). The Court "has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." *Shangold v. Walt Disney Co.*, No. 03-CV-9522 (WHP), 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (citing *Chambers*, 501 U.S. at 44), *aff'd*, 275 F. App'x 72 (2d Cir. 2008) (summary order); see *Potts v. Postal Trucking Co.*, No. 17-CV-2386 (ARR) (VMS), 2018 WL 794550, at *2 (E.D.N.Y. Feb. 8, 2018) (collecting cases).

**B.    Beeche Should Be Held in Contempt**

A court may hold a party in contempt for violation of an order "if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *E.E.O.C. v. Local 638–Local 28 of the Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985), *aff'd*, 478 U.S. 421 (1986). "It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

With respect to the first contempt element, the terms of an order are "clear and unambiguous" when they are "specific and definite enough to apprise those within its scope of the conduct that is being proscribed or required." *Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.*, 289 F. Supp. 2d 373, 377 (S.D.N.Y. 2003) (internal quotation marks omitted) (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)). Regarding the second element, "the clear and convincing evidence standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *United States v. Waterbury*, 5:18-CV-440 (MAD/TWD), 2021 WL 4304811, at *2 (N.D.N.Y. Sept. 22, 2021)(quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (finding defendants in contempt for multiple instances of willful violation of a court decree directing the turnover of the management of properties to plaintiff)). As to the third element, "reasonable diligence, at the very least, requires a party to develop reasonably effective methods of compliance. A party does not act with reasonable diligence in obeying a court order if it complied reluctantly or after a contempt motion had been filed." *Cricut, Inc. v. APA Tech. Ltd. Co.*, 698 F. Supp. 3d 538, 548 (E.D.N.Y. 2023) (citations and internal quotation marks omitted).

Where the petitioner on a motion for contempt has established that the alleged contemnor failed to comply with the order in question, the burden shifts to the alleged contemnor to prove an inability to comply. *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). However, "the alleged contemnor's burden is to establish his inability [to comply with the order] clearly, plainly, and unmistakably." *Id.*; *see also Donovan*, 726 F.2d at 59 ("[T]he burden is on defendants to substantiate their claimed inability [to comply] plainly and unmistakably." (citations and internal quotation marks omitted)).

- 10 -

Obedience of a court order is required unless and until it has been vacated or reversed, except in only the rarest of situations. *See Ginter Logistics Serv. Co. v. ACH Freight Forwarding, Inc.*, No. 07-CV-8677 (LAP), 2010 WL 4455402, at *2 (S.D.N.Y. Oct. 21, 2010) ("A party is obliged by law to comply with an order of the court unless and until it is stayed or reversed." (citing *Maness v. Meyers*, 419 U.S. 449, 458 (1975)). Where a court order requires or prohibits an action by a corporation, the order is also "in effect a command to those who are officially responsible for the conduct of its affairs." *CBS Broad. Inc.*, 814 F.3d at 100 (internal quotation marks omitted) (quoting *NLRB v. Hopwood Retinning Co.,* 104 F.2d 302, 305 (2d Cir. 1939)). A corporate officer who "prevent[s] compliance or fail[s] to take appropriate action within [his] power for the performance of the corporate duty, [he], no less than the corporation itself, [is] guilty of disobedience, and may be punished for contempt." *CBS Broad. Inc.*, 814 F.3d at 100 (quoting *NLRB,* 104 F.2d at 305).

### 1.    The Permanent Order Is Clear and Unambiguous

"A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden [or required]." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Here, the Permanent Order is undeniably clear and unambiguous. Indeed, paragraph 5 of the Permanent Order expressly requires defendants *and all other persons* to immediately surrender all Receivership Assets to the Receiver, cease any use or control of the Receivership Assets, and refrain from interfering with the Receiver's possession, management, or sale of the Receivership Assets. Dkt. No. 63 ¶ 5. Moreover, the definition of "Receivership Assets" clearly encompasses (i) administrator login

credentials and passwords for the server(s) located at the GBL Facility, (ii) any and all data,
hardware, or software Beeche removed or caused to be removed from the server(s) located
at the GBL Facility, (iii) the Porsche, and (iv) the Wrongfully Transferred Funds. *Id.* ¶¶ 3-5.
Pursuant to the Permanent Order, Beeche is required to immediately turn these
Receivership Assets over to the Receiver. *Id.* ¶ 5. The Permanent Order's plain language,
construed in light of the circumstances surrounding its formation, leaves no uncertainty as
to what Beeche was (and is) required to do.

### 2.    Proof of Noncompliance Is Clear and Convincing

"In the context of civil contempt, clear and convincing standards requires a
quantum of proof to demonstrate a reasonable certainty that a violation occurred."
*Waterbury*, 2021 WL 4304811, at *2. Pursuant to the clear and unambiguous terms of the
Permanent Order, Beeche must turn over to the Receiver "all Receivership Assets." Dkt.
No. 63 ¶¶ 4-5. Despite this requirement, and multiple demands, Beeche has failed,
neglected, and refused to do so. Melech Decl. ¶¶ 12-35; Ritschdorff Decl. ¶¶ 4-7.
Accordingly, the Receiver has established through clear and convincing evidence that
Beeche violated, and continues to violate, the unambiguous mandate of the Permanent
Order.

### 3.    Beeche Was Not Reasonably Diligent and Energetic in Attempting to Comply

"Reasonable diligence, at the very least, requires a party to develop and
execute reasonable methods of compliance" with the Court's order. *Casale v. Kelly*, 710 F.
Supp. 2d 347, 359 (S.D.N.Y. 2010) (quoting *Zino Davidoff SA v. CVS Corp.*, No. 06-CIV-
15332 (JGK), 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008)). Here, however, Beeche
has continued to ignore the Receiver's demands that he turn over the Receivership Assets,

despite being alerted to the fact that he had failed to comply with the terms of the Permanent Order. Ritschdorff Decl. **Exs. 1 & 2**. Such conduct precludes a finding that Beeche had been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (quoting *E.E.O.C.*, 753 F.2d at 1178).

In addition, it is undisputed that, despite several demands that Beeche turn over (i) administrator login credentials and passwords for the server(s) located at the GBL Facility, (ii) any and all data, hardware, or software Beeche removed or caused to be removed from the server(s) located at the GBL Facility, (iii) the Porsche, and (iv) the Wrongfully Transferred Funds, Beeche made no attempt—diligent or otherwise—to deliver these items to the Receiver. Melech Decl. ¶ 35; Ritschdorff Decl. ¶ 5. Rather, Beeche completely ignored the Receiver's requests. Melech Decl. ¶ 35; Ritschdorff Decl. ¶ 5. Critically, the closest Beeche came to responding was through his attorney when Beeche offered to provide the passwords to the GBL server(s) "under certain circumstances." Ritschdorff Decl. **Ex. C**. Beyond the fact that Beeche did not elaborate on the nature of these "circumstances", the Permanent Order clearly imposes no conditions on the Receiver to obtain possession of the Receivership Assets. *See generally* Dkt. No. 63. As a result, Beeche's attempt to levy a condition on the Receiver that is not required by the Permanent Order is the antithesis of reasonable diligence in attempting to comply with the Permanent Order. *CBS Broad. Inc.*, 814 F.3d at 98.

### 4. Beeche's Defenses Will Be Meritless

"A civil contempt order is designed to be coercive rather than punitive. Accordingly, a party's complete inability . . . to comply with an order . . . is a defense to a

charge of civil contempt." *Huber*, 51 F.3d at 10 (citations omitted). It is well settled, however, that "the burden of proving *plainly and unmistakably* that compliance is *impossible* rests with the contemnor." *Huber*, 51 F.3d at 10 (emphasis in original) (citations omitted).

As the contemnor, Beeche must prove convincingly that he cannot comply with the Permanent Order. Here, Beeche unquestionably has the administrator login credentials and passwords for the server(s) located at the GBL Facility as he was apparently willing to provide them to the Receiver "under certain circumstances." Ritschdorff **Ex. 3**. In addition, since Beeche has the administrator login credentials and passwords, an inference can and should be drawn that he has data, hardware, and/or software that originated from the server(s) located at the GBL Facility. Moreover, Beeche still has the Porsche in his possession. Melech Decl. ¶ 28. Finally, all transactions comprising the Wrongfully Transferred Funds occurred after August 8, 2025, and thus, the Permanent Order already requires Beeche to return these funds. Dkt. No. 63 ¶ 5(iv).

Therefore, Beeche has no meritorious defenses to the Motion.

## POINT II

## THE RECEIVER IS ENTITLED TO ATTORNEYS' FEES AND COSTS BECAUSE BEECHE'S CONTEMPT IS WILLFUL

### A.    Beeche's Contempt Is Willful

Where contempt is found, the Court may "consider several factors in calculating a fine, including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 658 (internal quotation marks and brackets omitted) (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.1982)); *see also Manhattan Indus., Inc.*, 885

F.2d at 5 ("Monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience." (citing *Perfect Fit Indus., Inc.*, 673 F.2d at 56–57)). Courts are authorized to assess attorney's fees where the contempt was willful. *Chambers*, 501 U.S. at 45 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)). An award of attorneys' fees and costs to the contempt victim can "serve either goal—the coercive or the compensatory." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 208 (S.D.N.Y. 2020).

Once a court has determined that an attorneys' fees award is appropriate, it must calculate the presumptively reasonable fee using the "lodestar" method. *See Davis v. XPW Wrestling Inc.,* No. 5:23-CV-675 (FJS/MJK), 2024 WL 3043407, at *5 (N.D.N.Y. June 18, 2024) (quoting *McGlynn v. Cools, Inc.*, No. 19-cv-03520 (GBD) (DF), 2020 WL 6561658, *4 (S.D.N.Y. July 1, 2020)) (applying the lodestar method to calculate presumptively reasonable attorneys' fees on a contempt motion). The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

"District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 94 (E.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)). Among other considerations, the district court must determine a reasonable hourly rate for the attorneys'

work.  Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  In assessing fees, then, district courts should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original).  Ultimately, a "presumptively reasonable [attorneys'] fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citation and internal quotation marks omitted).

   Here, notwithstanding the Permanent Order and numerous requests to Beeche, he has refused and continues to refuse to turn over the administrator login credentials and passwords for the GBL server(s), the Porsche, and the Wrongfully Transferred Funds.  Melech Decl. ¶ 35.  Beeche's continued refusal to comply is materially impairing the Receiver's ability to administer the Receivership Estate.  *Id.* ¶ 36.  Moreover, by disregarding the Receiver's repeated requests, Beeche is causing the Receivership Estate to incur unnecessary expenses in the pursuit of Receivership Assets that Beeche, pursuant to the Permanent Order, is obligated to provide immediately upon request.  *Id.*; Dkt. No. 63 ¶ 5.  In addition, the Receivership Estate is—and will be—damaged if the administrator login credentials and passwords for the GBL server(s), the Porsche, and the Wrongfully Transferred Funds are not turned over to the Receiver.  Melech Decl. ¶¶ 35, 36; Ritschdorff Decl. ¶ 3.  Critically, Beeche's contempt is clearly willful.  Beeche had actual notice of the

Permanent Order and was reminded of his obligations multiple times.  Ritschdorff Decl.

Exs. 1, 2; Melech Decl. Ex. A; Melech Decl. ¶¶ 15-21.  Rather than comply, Beeche

continues to neglect, ignore, or refuse the Receiver's requests pursuant to the Interim Order

and Permanent Order.

Accordingly, based on Beeche's willful contempt, an award of attorneys' fees

is justified.  *See Chambers*, 501 U.S. at 45.

1. **The Court Should Schedule an Application for the Submission and Determination of the Amount of Attorneys' Fees and Costs the Receiver Is Entitled to Recover**

The Receiver has incurred fees and costs associated with Beeche's refusal to

comply with the Permanent Order and the Receiver's requests to enforce the Permanent

Order and preceding Interim Order, as well as attorneys' fees and costs in connection with

this Motion, and the Receiver anticipates incurring additional attorneys' fees and costs until

the Motion is fully submitted.  Ritschdorff Decl. ¶ 8.

Accordingly, the Receiver respectfully requests leave to make a further

application for the submission and determination of the amount of costs and attorneys' fees

the Receiver is entitled to recover.

## CONCLUSION

The Receiver has shown by clear and convincing evidence that Beeche

willfully violated the Permanent Order.  Accordingly, the Receiver respectfully requests that

the Court issue an Order (i) finding Beeche in contempt of the Permanent Order, (ii)

directing Beeche to turn over to the Receiver the administrator login credentials and

passwords for the GBL server(s), any and all data, hardware, or software Beeche removed

or caused to be removed from the server(s) located at the GBL Facility, the Porsche, and the

Wrongfully Transferred Funds, (iii) imposing daily fines until Beeche complies with the Permanent Order, (iv) awarding damages to compensate the Receiver for the unnecessary costs incurred as a result of Beeche's willful refusal to comply with the Permanent Order, (v) awarding reasonable attorneys' fees and costs in an amount to be determined upon application to the Court, and (vi) granting such other and further relief as the Court deems just and proper.

Dated:  Albany, New York
        March 6, 2026

PHILLIPS LYTLE LLP

By:___ */s/ Todd A. Ritschdorff*_____
        Todd A. Ritschdorff, Esq.
        Marc H. Goldberg, Esq.
*Attorneys for Dotan Y. Melech,*
*President of United AMS, LLC, Court-Appointed*
*Receiver of Greg Beeche, Logistics, LLC*
*and Greg Logistics, LLC*
3 Winners Circle, Suite 306
Albany, New York 12205
Telephone No.: (518) 472-1224
Email: tritschdorff@phillipslytle.com
        mgoldberg@phillipslytle.com