

U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Mar 30 - 2026**

John M. Domurad, Clerk

**Gregory L. Beeche**
65 Smith Road
Mechanicville N.Y.
12118. U.S.A.
518-225-21-52
gregbeeche@gmail.com

**Honorable Judge Anne Nardacci,**

I respectfully submit this letter pro se following the termination of my relationship with prior counsel, Mr. Christopher Massaroni. I am currently seeking new representation; however, due to the urgency of the matters at hand, I am submitting this information directly, as Pro se, mentioned above.

I apologize for any procedural irregularities and appreciate the Court's consideration.

---

## 1. Background and Intent

From the outset of these proceedings, my primary objective has been to **first,** ensure that all legitimate creditors are paid in full; and **second,** preserve GBL the company, as a going concern. To that end, I actively pursued potential buyers and investors capable of acquiring the business and satisfying outstanding obligations. My pursuit started long before the Receiver was placed. However, the Receiver did not allow me to continue dialog with the main organization I was about to close.

At the time, the Greg Beeche Logistics LLC (GBL) had:

- Ongoing operations with approximately **$10 million in active projects**
- Longstanding client relationships, some over 20 years.
- Opportunities for continued revenue and recovery

Despite this, the Receivership process has instead moved into the liquidation of assets at what appears to be significantly below market value, when you view their marketing on the internet.

---

## 2. Asset Valuation Concerns

- Our typical sales were over $25M with gross profits of $40%

The Receiver has previously represented that:

- GBL enterprise value: approximately **$40 million**

However, current auction listings appear to reflect sales at a **fraction of that value**, in some cases as low as approximately **2% of replacement cost** When you review an Amada Shear worth in excess of $50K offered for $1,000; A Marvel Band saw worth $71,000,00 offered for $1,000. A Nissan Pick Up truck, worth $15,000 offered for $500.00. The result; $2,500 total sale price, with a value of $136,000 actual worth. That amounts to a less than selling for less than 2 percent of the value. The GBL rental inventory alone worth $19.5M they would sell for $390,000. If they sold all assets as the Receiver stated worth $40M, they would be paid $800K.  This is blatantly wrong.

This raises serious concerns regarding:

- Preservation of estate value
- Fairness to creditors (including employees owed wages, of $600K)
- Whether liquidation is being conducted in a commercially reasonable manner
- This naturally brings up concerns that there are controlled bidders involved with the so called "auction".

---

## 3. Ownership of Assets

It is critical to clarify:

- The **Waterford facility (356 Hudson River Road)** Plant is **owned by me personally**, not GBL.
- The **intellectual property (IP)**—representing over **40 years of development and 3.2 TB of data**—is also **personally owned**, not a corporate asset of GBL. Please note Attorney/ CPA David Evans' letter dated March 22, 2023, and then updated on November 4th 2025.

These distinctions were not initially understood by opposing counsel or the Receiver and are central to the present dispute.

---

## 4. Insurance and Shutdown of Operations

GBL maintained insurance coverage through **September 25, 2025**, and had developed a revised operational structure that reduced liability costs by over **60%**. This by:

Eliminating field installation of our equipment; now not by GBL; only the technical support at the site, by GBL; full time; our clients will install, GBL will instruct and control the safe use. Also, our stipulation with our clients that they would add GBL as Additional insured, on top of our minimal cost Liability which will be about 40% of the original, when we performed all the install/remove in the field.

Despite this:

- The Receiver declined to renew insurance coverage
- The company was subsequently shut down, by the Receiver, citing lack of insurance.

This occurred while active projects and revenue opportunities were still in place. This move created a serious difficult situation for our clients who were needing our technology/equipment and needed it on time. <u>This caused them $ millions of loses</u>, both for them and for their clients; in my opinion.

## 5. Procedural Concerns

- Initial filing (July 17, 2025) allowed **21 days** to respond
- A subsequent **emergency filing (July 23, 2025)** <u>alleged fraud</u> and required a response within **2 days. We were not able to find an attorney this quickly. The Emergency filing was deliberately entered knowing GBL was not able to move quickly enough to comply with these dates.**
- Approximately **500 pages of documentation** (4 filings) were served without sufficient time or legal representation to review.
- They have spent, so far almost $500K of our GBL income on their "needs".

I was informed the <u>hearing would be stayed</u> due to federal bankruptcy proceedings, but it proceeded nonetheless, resulting in the appointment of a Receiver.

Your honor; With our reputation and integrity evident; including our honest description of our current situation; that the Pandemic created this dilemma; How can anyone, conclude that we needed a Receiver to take over our very intricate operations. The Receiver has no experience in, first, running a business; second; the intricacies; design capabilities, and engineering requirement needed for a safe productive timely product needed to comply with contract needs.

## 6. Good Faith Efforts and Financial Position

- Estimated debt to the bank: **around $8 million, although stated to be more. I was informed that McCormick paid approximately $3,5M or less, to the creditor bank.**
- Ongoing efforts to secure investors and buyers capable of **paying all creditors in full**

- Current opportunity: **~ In NY City; Project for 29 months on site**, including potential **mobilization funding,** the consultant for the owners of the project, stated "*We are locked in*". "*no other company can provide what is necessary to perform the work*", **confidential details can be provided immediately upon "in camera review"**. To emphasize, we are

currently in negotiations with the largest Scaffolding Company in the U.S. BrandSafway—Safway Atlantic. They are aware of our situation in Receivership; most important, they are very interested and we are in continuous conversation [last, actually yesterday morning, Sunday March 30, 2026]. This and that further, we are discussing the future marketing relationship with Brand; first in NYCity; or possibly the entire USA.

- We are actively working toward closing this opportunity. Just today Monday March 30, 2026, they are meeting and attempting to move forward. However, the due diligence, mandatory with a $5BN in sales company takes time.

- Understand, that in October 2019, just before the start of the pandemic, BrandSafway offered GBL $55M for the company (see enclosed Letter of Intent, 2019), less debt ($11M then). However, the pandemic shut down all negotiation; back then.

---

## 7. Request for Relief

In light of the above, I respectfully request that the Court:

1. **Allow a limited period (approximately 4 months)** to secure investor participation and execute a joint venture that will invest in payoff to the McCormick debt.
2. Permit efforts to **maximize enterprise value rather than liquidate at distressed pricing**
3. Consider the impact on:
   - Employees owed wages (~$600,000)
   - Creditors who may otherwise be paid; or not at all, the Receiver stated, will not be paid; by the Receiver.
   - Preservation of long-standing business operations; clients that have relied on GBL for 25 years; some 19 projects and more, are still in limbo due to this Receivers' company shutdown.

Backup information upon the Court request is available on upon "in camera review"; all mentioned above.

---

## 8. Closing

I respectfully submit that my actions throughout this process have been in **good faith**, with the consistent goal of paying all creditors; preserving value and satisfying all obligations.

I appreciate the Court's time and consideration and I am prepared to provide any supporting documentation, including evidence of investor discussions and project opportunities, on: Camera review".

Your honor, I beg the Courts indulgence to allow us 4 months to complete our negotiations with our potential joint venture partner Safway Atlantic/Brand Safway.

Respectfully submitted,

**Gregory L. Beeche**
Link to Project: MSG Sphere, Las Vegas: https://vimeo.com/669689277
Greg Beeche Logistics web site: www.gregbeeche.com


PS Enclosures:

Exhibit A.- Attorney/CPA David Evans' letter dated March 22nd 2023, updated on November 4th 2025.
Exhibit B.- Gregory L. Beeche written points for my affidavit Pro se.
Exhibit C.- Official audio of Ch11 Court testimony, in a camera hearing on 12-12-2025.
Exhibit D.- Greg Beeche sworn affidavit to the Ch11 Court testimony, in a camera hearing on 12-12-2025.
Exhibit E. Report from Mr. Thomas Morgan, retained by the Receiver, Mr. Dotan Y. Melech. 9-28-2025.
Exhibit F.- Letters of support of long-standing clients and Affidavit of Mike Budd from New Hudson Facades.
Exhibit G.- Letter of Intent from BrandSafway Purchasing Beeche. No longer an NDA. 10-8-2019.