**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MCCORMICK 103, LLC,

                              Plaintiff,

v.                                           1:25-cv-00944 (AMN/CBF)

GREG BEECHE, LOGISTICS, LLC *et al.*,

                              Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BUCHANAN INGERSOLL**<br>**& ROONEY P.C.**<br>Union Trust Building<br>501 Grant Street – Suite 200<br>Pittsburgh, Pennsylvania 15219 | **CHRISTOPHER P. SCHUELLER, ESQ.** |
| 50 S. 16th Street, Suite 3200<br>Philadelphia, Pennsylvania 19102<br>*Attorneys for Plaintiff* | **MARK PFEIFFER, ESQ.** |
| **HODGSON RUSS LLP**<br>The Guaranty Building<br>140 Pearl Street – Suite 100<br>Buffalo, New York 14202 | **JON T. POWERS, ESQ.** |
| 677 Broadway – Suite 401<br>Albany, New York 12207<br>*Attorneys for Defendants* | **CHRISTOPHER MASSARONI, ESQ.**<br>**KEGAN SHEEHAN, ESQ.** |
| **PHILLIPS LYTLE LLP**<br>3 Winners Circle – Suite 306<br>Albany, New York 12205<br>*Attorneys for Receiver* | **TODD A. RITSCHDORFF, ESQ.**<br>**MARC H. GOLDBERG, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION & ORDER**

## I.    INTRODUCTION

Receiver Dotan Y. Melech seeks a court order finding Defendant Gregory L. Beeche ("Defendant Beeche" or "Beeche") in civil contempt for his failure to abide by the terms of the order appointing Dotan Y. Melech as receiver on a permanent basis, which this Court entered on January 30, 2026.  Dkt. No. 75 ("Motion").  Defendant Beeche opposes the Motion and cross-moves to temporarily stay the Receiver's powers and obligations under the Permanent Receivership Order.  Dkt. No. 78 ("Cross-Motion").

For the reasons set forth below, the Receiver's Motion is granted, and Defendants' Cross-Motion is denied.

## II.    BACKGROUND

### A.  Procedural History

The Court presumes the parties' familiarity with the facts of this case, as set forth in the Court's prior Memorandum-Decision & Order appointing a receiver on a temporary basis.  *See* Dkt. No. 28 at 3-8.  In summary, on July 17, 2025, Plaintiff McCormick 103, LLC commenced this action pursuant to 28 U.S.C. § 1332(a)(1) against Beeche, Greg Beeche, Logistics, LLC ("GBL"), Greg Logistics, LLC ("GL"), and the New York State Department of Taxation and Finance, alleging various causes of action under New York state law based upon purported defaults on millions of dollars in loan agreements.  *See generally* Dkt. No. 1.  The next day, Plaintiff filed an emergency motion pursuant to Rule 66 of the Federal Rules of Civil Procedure seeking the appointment of a receiver over GBL and GL, as well as the real property of Beeche.  Dkt. Nos. 5-6.

On July 31, 2025, Beeche filed for personal bankruptcy in the United States Bankruptcy Court for the Northern District of New York pursuant to Chapter 13 of the Bankruptcy Code, *see* Dkt. No. 78-1 at 7, and thus, on August 6, 2025, Plaintiff filed an amended complaint to, *inter alia*,

remove Beeche and the New York State Department of Taxation and Finance as parties to the action, *see* Dkt. No. 23, alongside a letter motion clarifying that Plaintiff now sought the appointment of a receiver over only GBL and GL. *See* Dkt. No. 25. On August 8, 2025, this Court entered a temporary receivership order appointing Dotan Y. Melech as temporary receiver. Dkt. No. 28 ("Temporary Receivership Order").

Then, on October 24, 2025, GBL filed for bankruptcy in the United States Bankruptcy Court for the Northern District of New York pursuant to Chapter 11 of the Bankruptcy Code. Dkt. No. 50. Accordingly, this case was automatically stayed pursuant to 11 U.S.C. § 362 of the Bankruptcy Code. *See id.* On November 4, 2025, Plaintiff filed a motion seeking clarification regarding whether the Receiver remained vested with the powers and duties described in the Temporary Receivership Order as of October 24, 2025. *See* Dkt. No. 52. On November 5, 2025, the Court issued an order clarifying that the Temporary Receivership Order remained in effect as of October 24, 2025 and that the Receiver had not been terminated or discharged from his duties. *See* Dkt. No. 53. On December 23, 2025, GBL's bankruptcy case was dismissed due to GBL's failure to provide proof of appropriate insurance, *see* Dkt. No. 56-1, and Beeche's personal bankruptcy was dismissed on January 21, 2026, *see* Dkt. No. 78-1 at 10, which lifted the automatic stay as to GBL and Beeche, respectively. On January 23, 2026, Plaintiff filed a second amended complaint to re-name Beeche as a defendant in this matter and to foreclose on his real property. See Dkt. No. 59. Thereafter, on January 30, 2026, the Court issued an order appointing Dotan Y. Melech as receiver on a permanent basis ("Receiver"). *See* Dkt. No. 63 ("Permanent Receivership Order" or "Order").[1]

---

[1] The Court further noted in the Permanent Receivership Order that the term of the temporary receivership was "extended *nunc pro tunc* to the Effective Date" of the Permanent Receivership Order, i.e., January 30, 2026. *See* Dkt. No. 63 at 3 n.1.

**B. The Motion and Cross-Motion**

On March 6, 2026, the Receiver filed an emergency motion seeking to hold Defendant Beeche in contempt for allegedly violating the Court's Permanent Receivership Order.  Dkt. No. 75.  Specifically, the Receiver argues that Defendant Beeche is in civil contempt of the Permanent Receivership Order because he has failed, neglected, or otherwise refused to turn over certain assets that, pursuant to the Permanent Receivership Order, must be held and managed by the Receiver ("Receivership Assets").  Dkt. No. 75-1 at 7; *see also* Dkt. No. 63 at ¶ 5(i) (noting that Defendants must "surrender possession of all of the Receivership Assets to [the] Receiver, of whatever nature and wherever located, whether such Receivership Assets are in the possession of Defendants or . . . any other person or entity").  In particular, the Receiver contends that Defendant Beeche (i) refuses to turn over administrative login credentials and passwords for the GBL servers despite several demands from the Receiver; (ii) has not surrendered a 2014 Porsche Panamera owned by GBL (the "Porsche") to the Receiver; and (iii) has not returned funds wrongfully transferred from GBL's business checking account totaling $71,000.  *See* Dkt. No. 75-1 at 10-14, 19.  On March 11, 2026, Defendants, who are appearing for the first time in this action,[2] opposed the Motion and cross-moved to "stay [the] Receiver's efforts to dismantle the Defendant Companies."  Dkt. No. 78.  On March 13, 2026, the Receiver replied to the Motion, *see* Dkt. No. 79, and on March 18, 2026, the Court held a hearing on both the Motion and Cross-Motion.  *See* Dkt. Nos. 86, 90.  Accordingly, the Receiver's Motion and Defendants' Cross-Motion are now ripe for adjudication.

---

[2] Beeche filed a motion to intervene on September 1, 2025, *see* Dkt. No. 36, but that motion was withdrawn on December 23, 2025.  Dkt. No. 55.

## III.    STANDARD OF REVIEW

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *In re Markus*, 78 F.4th 554, 564 (2d Cir. 2023) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  Under Rule 45(g) of the Federal Rules of Civil Procedure, a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g).  "For a contempt order to issue, the moving party must establish 'by clear and convincing evidence that the alleged contemnor violated the district court's edict.'"  *United States v. Waterbury*, No. 18-cv-440, 2021 WL 4304811, at *2 (N.D.N.Y. Sept. 22, 2021) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).  "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."  *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (citation omitted).  "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred."  *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-cv-4355, 2021 WL 266284, at *6 (S.D.N.Y. Jan. 27, 2021) (quoting  *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)) (additional citations omitted).

## IV.    DISCUSSION

### A.  Motion for Contempt

#### 1.  Clear and Unambiguous Order

Regarding the first prong, "[a] clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed,' and the person or entity 'must be able

to ascertain from the four corners of the order precisely what acts are required or forbidden.'" *Jones v. Milana*, No. 20-cv-340, 2024 WL 4712798, at *3 (N.D.N.Y. Sept. 9, 2024) (quoting *King*, 65 F.3d at 1058) (brackets omitted), *report and recommendation adopted*, 2024 WL 4501011 (N.D.N.Y. Oct. 16, 2024); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL 5067500, at *9 (S.D.N.Y. Sept. 27, 2017).  Specifically, a clear and unambiguous order must "be specific in terms and . . . describe in reasonable detail the act or acts sought to be restrained."  *Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*, No. 19-mc-275, 2019 WL 13046982, at *2 (S.D.N.Y. Aug. 16, 2019) (internal quotation marks, citations, and alterations omitted).

Here, Defendant Beeche does not contest the clarity of the Permanent Receivership Order. Indeed, the Permanent Receivership Order clearly and unambiguously required Defendants to "surrender possession of all of the Receivership Assets to [the] Receiver, of whatever nature and wherever located, whether such Receivership Assets are in the possession of Defendants or . . . any other person or entity."  Dkt. No. 63 at ¶ 5(i).  The Permanent Receivership Order further "enjoined, restrained, stayed, and prohibited [Defendants] from using, possessing, transferring or disposing of any Receivership Assets or negotiating on behalf of the Defendants" or "interfer[ing] with the taking of control, possession, management, or sale" of the Receivership Assets by the Receiver.  *Id.* at ¶ 5(ii).

Accordingly, the Court finds that the Permanent Receivership Order is sufficiently clear "to allow [Defendant] to ascertain precisely what [he] can and cannot do."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 292 (2d Cir. 2008).

### 2.  Clear and Convincing Evidence of Noncompliance

As to the second prong, the record demonstrates that Defendant Beeche has not complied

with the Permanent Receivership Order.  Notwithstanding the Receiver's multiple efforts to marshal the Receivership Assets pursuant to the Permanent Receivership Order, Defendant Beeche has failed to turn over all of the Receivership Assets, in violation of the Permanent Receivership Order.  Specifically, Defendant Beeche does not contest that he refused to turn over the administrative login credentials and passwords for the GBL servers, the Porsche, and the wrongfully transferred funds from GBL's business checking account.  *See generally* Dkt. No. 78-1.

Accordingly, the Court finds clear and convincing evidence of Defendant Beeche's noncompliance with the Permanent Receivership Order.

### 3.  Reasonable Diligence

Furthermore, there is no indication in the record that Defendant Beeche has made any reasonable attempt to fully comply with the Permanent Receivership Order.  "A party defending against contempt may assert noncompliance with a court's order because of inability or impossibility, although to do so, the alleged contemnor must prove clearly, plainly and unmistakably that compliance is impossible." *Experience Hendrix, LLC v. Hendrix*, No. 17-cv-1927, 2021 WL 82269, at *7 (S.D.N.Y. Jan. 11, 2021) (internal quotation marks and citations omitted).  "A party does not act with reasonable diligence in obeying a court order if it complied reluctantly or after a contempt motion had been filed." *New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-449, 2022 WL 4357410, at *3 (E.D.N.Y. Sept. 20, 2022) (internal quotation marks and citations omitted).

First, regarding the Porsche, Defendant Beeche does not contest that the Porsche is an asset of the Receivership that remains in Beeche's possession.  Instead, Beeche argues that he has not been withholding the Porsche willfully, claiming that the Porsche is not in serviceable condition

and likely cannot be transported without the use of a towing service. *See* Dkt. No. 78-1 at 20-21; *see also* Dkt. No. 78-2 at ¶ 38. However, "[a] defendant is not reasonably diligent when he or she ignores the order or takes only superficial actions that strain both the language and intent of the order." *Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, No. 19-cv-3351, 2020 WL 1900502, at *7 (S.D.N.Y. Apr. 17, 2020) (internal quotation marks and citation omitted). According to Defendant Beeche, the Porsche is currently located at his sister's residence in Burnt Hills, New York, *see* Dkt. No. 90 at 15:05-15, but to date, Beeche has not disclosed to the Receiver, nor to this Court, the precise location of the Porsche, thereby impeding the Receiver from retrieving it. Moreover, to the extent that Defendant Beeche submits that he is willing to make arrangements for the Receiver to retrieve the Porsche, he has not taken any action to make such arrangements. And even assuming that Beeche did make such arrangements, attempts to comply with the Permanent Receivership Order *after* the filing of the contempt motion "do not cure a finding of contempt based on their prior inaction." *MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-cv-1294, 2021 WL 1946380, at *6 (E.D.N.Y. May 14, 2021); *see also Aquavit*, 2020 WL 1900502, at *9 (finding lack of diligence when the defendants took "a reactive approach towards compliance" that required "prompting from [p]laintiff").

Second, regarding the wrongfully transferred funds, the Receiver alleges, and Beeche does not dispute, that Beeche withdrew or transferred money from GBL's business checking account on five separate occasions after the Court entered the Temporary Receivership Order on August 8, 2025, totaling $71,000. *See* Dkt. No. 75-1 at 7, 13-14. Defendant Beeche similarly contends that he did not withhold these funds from the Receiver willfully, explaining, without providing any documentary or other support, that the funds were "primarily utilized to make certain payments on behalf of GBL that the Receiver would be responsible for satisfying." Dkt. No. 78-1 at 20-21.

8

Such excuses are again unavailing.  The Permanent Receivership Order expressly states that the Receiver "supplant[s] any rights or powers of Defendants to hold and manage the Receivership assets."  *See* Dkt. No. 63 at ¶ 4(iii).  Thus, pursuant to the Permanent Receivership Order, it is the Receiver, not Beeche, who is authorized to manage the assets of the Receivership, including determining which GBL expenses were going to be paid and from which funds.

Defendant Beeche further contends that "[a]ny additional funds utilized for purposes outside of GBL obligations are the result of . . . Beeche's unfamiliarity with the procedures and requirements attendant to the [Temporary and Permanent Receivership Orders]."  Dkt. No. 78-1 at 21.  This argument too, is unavailing, as the standard for holding someone in contempt is objective, rather than subjective.  *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (noting that "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable"); *see also Aquavit Pharms. v. UBio Med, Inc.*, No. 19-cv-3351, 2019 WL 8756622, at *6 (S.D.N.Y. Dec. 16, 2019) (finding the excuses offered by defendants regarding their inability to understand the court's injunction to be "not credible"), *report and recommendation adopted in relevant part*, 2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020).

Finally, regarding the GBL servers, the Receiver claims that, despite making several demands, Defendant Beeche has refused to provide the administrative login credentials and passwords for the GBL servers.  *See* Dkt. No. 75-1 at 19.  In response, Defendant Beeche contends that he has refused to do so in order to protect his personal intellectual property, which, according to Beeche, is comprised of patents and trade secrets stored on the GBL servers.  *See* Dkt. No. 78-

9

6 at ¶¶ 16, 22.[3]

As an initial matter, the Permanent Receivership Order defines "Receivership Assets" as any "Asset," that is "owned, controlled or held by *or* for the benefit of the Defendants, in whole or in part," *see* Dkt. No. 63 at ¶ 3(b)(i) (emphasis added), and the definition of "Asset" includes "intellectual property." *Id.* at ¶ 3(a).  Here, all of the intellectual property that is stored on the GBL servers is held for the benefit of the Defendant Companies.  *See* Dkt. No. 78-2 at ¶ 43 (affirming that Beeche formed GBL "as a vehicle to put [his] intellectual property to work in the marketplace").  Therefore, Beeche's intellectual property is a Receivership Asset, and thus, property of the receivership estate, pursuant to the Permanent Receivership Order.[4]

Moreover, to the extent that Defendant Beeche claims that his patents are his personal property, and thus not property of the Receivership, every patent Beeche identified in his opposition brief is expired, *see* Dkt. No. 79 at 10; Dkt. No. 90 at 8:07-09; *see also* Dkt. No. 79-1 at ¶ 4 (chart of patents listing their status), and thus, Beeche has failed to establish any protected intellectual property interest in such documents located on the GBL servers.  *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 451 (2015) ("[W]hen the patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public.").

---

[3] Defendants separately argue that the Receiver had no authority to access the GBL servers because the Court's temporary receivership order "expired."  Dkt. No. 78-2 at ¶¶ 11-12.  This Court has twice clarified for the avoidance of doubt that (i) the Temporary Receivership Order remained in effect until the effective date of the Permanent Receivership Order, i.e., January 30, 2026, and (ii) that the Receiver had not been terminated or discharged from his duties.  *See* Dkt. No. 53; Dkt. No. 63 at 3 n.1.  As a result, this argument has no merit.

[4] The Court notes that, aside from certain patents, Beeche has not specifically identified any of the intellectual property located on the GBL servers that he purports to own personally, nor has he brought to the Court's attention the presence of such intellectual property on the servers at any time prior to the filing of the Motion, despite the fact that the receivership has been in place since August 2025.  Moreover, during the hearing on the Motion, counsel for Defendant Beeche still could not identify with specificity any intellectual property located on the GBL servers that Beeche purportedly owns.  *See* Dkt. No. 90 at 10:05-25, 11:01-15.

Accordingly, by refusing to provide the administrative login credentials and passwords for the GBL servers, by refusing to disclose the location or facilitate the retrieval of the Porsche, and by failing to turn over the wrongfully transferred funds, much less provide an accounting of the expenses that were paid with the funds, Defendant Beeche has not made diligent attempts to comply with the Permanent Receivership Order in a reasonable manner. *See Aquavit Pharms.*, 2019 WL 8756622 at *7-8 (finding defendants in contempt where compliance efforts were "half-hearted at best, and purposeful, intentional and willful at worst").

*  *  *

Accordingly, the Receiver has successfully established all three elements of the contempt standard.    Thus, the Court holds Defendant Beeche in civil contempt of the Permanent Receivership Order.

### 4.  Contempt Sanctions

Having found civil contempt, the Court next considers the issue of sanctions.  Courts enjoy "broad discretion in determining the appropriate sanction for civil contempt."  *Kaul v. Intercontinental Exch.*, No. 21-cv-6992, 2025 WL 2636589, at *6 (S.D.N.Y. Sept. 12, 2025). "Unlike sentences for criminal contempt, which are punitive in nature and intended to vindicate the authority of the court, the sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party."  *United States Sec. & Exch. Comm'n v. Ahmed*, No. 15-cv-675, 2023 WL 5000397, at *4 (D. Conn. Aug. 4, 2023) (quoting *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996)).  "The Second Circuit has counseled that when imposing penalties for a coercive purpose, the district court should consider several factors including: (1) the character and magnitude of the harm threatened by the party's continued noncompliance; (2) the efficacy of the sanction in bringing about compliance; and (3) the

contemnor's ability to pay." *Guadalupe v. Chase Auto Fin. Corp.*, No. 25-cv-718, 2026 WL 472623, at *4 (E.D.N.Y. Feb. 19, 2026) (citations omitted). "The contemnor bears the burden of proving a financial inability to pay and must establish an inability to pay 'clearly, plainly, and unmistakably.'" *Id.* (quoting *Dell Inc. v. Compudirect, Inc.*, 316 F. App'x 32, 34 (2d Cir. 2009)).

Having considered the relevant factors, the Court finds that a monetary sanction of $1,000 per day is sufficient, but not greater than necessary, to compel compliance. In imposing this sanction, the Court considers the fact that Beeche's noncompliance has persisted since this Court initially appointed the Receiver on August 8, 2025, the Receiver has made numerous attempts to secure compliance, and that this is the first order of contempt imposed upon him. Moreover, "although a contemnor may be excused from paying monetary sanctions if he lacks the financial ability to pay, the burden is on the contemnor to raise such a defense," *see Tacuri v. Nithun Constr. Co.*, No. 14-cv-2908, 2019 WL 6914042, at *3 (E.D.N.Y. Dec. 19, 2019) (citations omitted), and here, Defendant Beeche has not raised his inability to pay as a defense to the imposition of monetary sanctions. Accordingly, the Court imposes a daily coercive fine of $1,000 to bring about Defendant Beeche's compliance under the Permanent Receivership Order. However, if Defendant Beeche comes into full compliance by April 10, 2026, no sanction will be imposed. *See CBS Broadcasting*, 814 F.3d at 101 (explaining that the contemnor must have the opportunity to "reduce or avoid the fine through compliance").

Moreover, if it finds that Defendant Beeche's violation of the Permanent Receivership Order was willful, the Court may also award the Receiver reasonable attorneys' fees and costs of prosecuting the contempt motion. *See Broker Genius Inc. v. Seat Scouts LLC*, No. 17-cv-8627, 2019 WL 2462333, at *3 (S.D.N.Y. June 13, 2019); *see also Ahmed*, 2023 WL 5000397, at *4 (noting that "while willfulness may not necessarily be a prerequisite to an award of fees and costs,

12

a finding of willfulness strongly supports granting them"). "In order to establish willful contempt, it must be shown that the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Broker Genius*, 2019 WL 2462333, at *4 n.3 (citation omitted).

Here, the Court finds that Defendant Beeche's contempt was willful. Beeche does not dispute that he had actual notice of the Court's Permanent Receivership Order, and he was reminded of his obligations with respect to abiding by the Permanent Receivership Order multiple times. *See* Dkt. No. 75-3 at 1-31; Dkt. No. 75-5; *see also* Dkt. No. 75-4 at ¶¶ 15-21. Nor does Beeche contend that he was unable to comply with the Permanent Receivership Order, or move to amend the Permanent Receivership Order. For the reasons described *supra* Section IV(A)(3), the Court finds that Defendant Beeche has not made a good faith effort to comply with the Permanent Receivership Order. Accordingly, the Court finds that an award of reasonable attorneys' fees and costs is appropriate.

## B. Cross-Motion to Stay Proceedings

Lastly, Defendants cross-move to "[s]tay the Receiver's actions to dismantle" GBL and GL. Dkt. No. 78 at 1. Specifically, Defendants seek a temporary stay of the Receiver's powers and obligations under the Permanent Receivership Order for a period of 120 days to allow Beeche to "finalize financing and secure pending business opportunities" in an effort to maintain GBL as a viable going concern. Dkt. No. 78-1 at 5, 18.

"A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *State Farm Mut. Auto. Ins. v. Mittal*, No. 16-cv-4948, 2018 WL 3127155, at *2 (E.D.N.Y. June 25, 2018) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012)). "In deciding whether to

13

stay proceedings, courts in the Second Circuit have examined the following five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Nuccio v. Duve*, No. 13-cv-1556, 2015 WL 1189617 at \*5 (N.D.N.Y. March 16, 2015) (citations omitted). "In balancing these factors on a case-by-case basis, the basic goal is to avoid prejudice." *Id.* (internal quotation marks, citations, and alterations omitted). "It is the moving party's burden to establish a clear case of hardship or inequity in being required to go forward." *Cohen v. Saraya USA, Inc.*, No. 23-cv-8079, 2025 WL 581566, at \*18 (E.D.N.Y. Jan. 20, 2025), *report and recommendation adopted*, 2025 WL 580369 (E.D.N.Y. Feb. 23, 2025).

In the instant case, upon consideration of these factors, the Court finds that a stay of the Permanent Receivership Order, and the Receiver's efforts pursuant to that Order, is not warranted. Regarding the first factor, Plaintiff contends that it has an interest in proceeding expeditiously with this litigation, as the Receivership costs continue to mount. *See* Dkt. No. 90 at 57:11-21. Given these costs, the Court finds that the prejudice to Plaintiff of further delaying the orderly disposition of assets is significant. As to the second factor, Defendants contend that they would be prejudiced if the Permanent Receivership Order is not stayed because the Receiver's liquidation efforts, specifically, the Receiver's engagement in a piecemeal "fire sale" of GBL's assets, are inconsistent with the purpose of a receivership—to maximize asset value. *See* Dkt. No. 78-1 at 10, 17-18. However, the Court finds that Defendants are not prejudiced by the actions of the Receiver, who, pursuant to the Permanent Receivership Order, is authorized to "market, sell or otherwise dispose of the Receivership Assets[.]" *See* Dkt. No. 63 at ¶ 4(viii). The Receiver is a court-appointed

14

fiduciary who has a duty to preserve and maximize the value of the Receivership Estate. Defendants fail to put forth any evidence that the Receiver's disposition of assets is improvident.[5] Regarding the third factor, the Court finds that halting the actions of the Receiver, whom the Court appointed over eight months ago, would impede the efficient and expeditious progress of this action. *See Louis Vuitton*, 676 F.3d at 104 (noting that a court has "a well-recognized interest in disposing of the causes on its docket with economy of time and effort" (internal quotation marks and citation omitted)). Lastly, the fourth and fifth factors—the interests of persons who are nonparties to this litigation and the public—disfavor a stay, as a stay would cause the Receivership Estate to incur additional expenses, *see* Dkt. No. 90 at 57:11-21 (noting that the Receiver's expenses are $125,000 per month on average, with an additional $20,000 of unpaid real estate taxes that accrues on a monthly basis), which in turn reduces the funds available to pay other creditors and employees. Additionally, Defendant Beeche has not offered a reasonable alternative to an auction of Defendant Company assets. GBL was unable to reorganize in bankruptcy court, *see* Dkt. No. 56-1, and Defendants have not articulated a plan for paying the costs to restart their operations, including insurance costs. *See* Dkt. No. 90 at 58:05-15. Nor have Defendants provided proof of financing or contracts for future work that exceeds or even approaches the $13 million of secured debt. *See id.* at 58:16-22. Moreover, it is in the public's interest that court-appointed receivers are empowered to maximize the value and manage the disposition of assets efficiently, and the receiver has a fiduciary duty to do precisely that—to act in the best interests of the receivership estate. *See KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, No. 19-cv-1562, 2020 WL 1157650, at *2 (N.D.N.Y. Mar. 10, 2020); *see also S.E.C. v. Byers*, No. 08-cv-7104,

---

[5] Defendants' reliance on the opening bids for various auction items likewise fails to demonstrate that the Receiver is not maximizing asset value. *See* Dkt. No. 81. An opening bid is not a final sale price; it is a floor that is deliberately set to attract bidders and to stimulate interest.

2008 WL 5102017, at *1 (S.D.N.Y. Nov. 25, 2008).

Accordingly, for the foregoing reasons, the Court denies Defendants' Cross-Motion.

## V.     CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Receiver's motion for contempt, Dkt. No. 75, is **GRANTED**; and the Court further

**ORDERS** that Defendants' cross-motion to stay, Dkt. No. 78, is **DENIED**; and the Court further

**ORDERS** that Defendant Beeche must immediately transfer the administrative login credentials and passwords for the GBL servers, the 2014 Porsche Panamera, and all wrongfully transferred funds, by wire or certified check, to the Receiver; and the Court further

**ORDERS** that Defendant Beeche and the Receiver shall each file and serve an affidavit as to whether Defendant Beeche is in full compliance with the Permanent Receivership Order by **April 10, 2026 at 5:00 PM**; and the Court further

**ORDERS** that, if full compliance is not achieved by **April 10, 2026**, **a coercive fine of $1,000 shall be imposed for each subsequent business day of non-compliance**, until full compliance is achieved, which shall be paid to the Court; and the Court further

**ORDERS** that the Receiver's counsel shall file proof of attorneys' fees and costs it incurred in preparing for this motion w**ithin fourteen (14) days of the date of this Memorandum-Decision & Order**; and the Court further

**ORDERS** that Defendants will have **five (5) business days to respond**; and the Court further

**ORDERS** that the determination of attorneys' fees and costs be referred to Magistrate

16

Judge Freedman; and the Court further

  **ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the

Parties in accordance with the Local Rules.

  **IT IS SO ORDERED.**

Dated: April 3, 2026
    Albany, New York

Anne M. Nardacci
U.S. District Judge

17