Case 1:25-00944-AMN-CBF                Document 123        Filed 04/29/2026            Page 1 of 4

**Honorable Anne M. Nardacci**
United States District Court
Northern District of New York
James T. Foley Courthouse
Albany, New York 12207

**Re:** *McCormick 103 LLC v. Greg Beeche Logistics LLC, et al.*
Civil Action No. 1:25-cv-00944-AMN-CBF

U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Apr 29 - 2026**

John M. Domurad, Clerk

**Submission of Gregory L. Beeche (Pro Se)**

Your Honor:

I, Gregory L. Beeche, respectfully submits this statement pro se, as I have not yet retained counsel, in response to matters presently before the Court, including, but not limited to, filings related to BG Lift hoists, Enclos Corp. and the Receiver's submissions, including Document 121 dated April 24, 2026.

## I. BG Hoists Transaction

With respect to the BGLift hoists purchased by Enclos prior to the appointment of the Receiver, I state that such transactions were conducted "*in the sales of inventory to buyers in ordinary course of the Pledgor's business*" according with "SECURITY AGREEMENT" of Bank of America, page 3. The hoists at issue were designed and invented by me and manufactured in Italy.

Greg Beeche Logistics LLC ("GBL") originally ordered 24 units and paid a 30% deposit. Prior to finalizing the purchase, GBL sought financing from Bank of America for the remaining 70% balance. However, due to the global COVID-19 pandemic, manufacturing delays extended for more than one year, during which time the financing offer expired.

As a result, GBL was required to self-finance the purchase and could only afford to acquire 12 units. The remaining 12 units were forfeited along with the associated deposit, despite having already been manufactured. This outcome demonstrates that the lender declined to recognize the equipment as acceptable collateral, contrary to assertions made by Mr. Todd Ritschdorff.

This transaction is consistent with prior sales conducted by GBL, including a $450,000 sale of hoists to BrandSafway during the period in which the Receiver had assumed control of GBL's accounts and operations.

I respectfully submit that the Receiver's characterization of these transactions constitutes an overreach and is part of a broader pattern of conduct intended to undermine both GBL and myself personally.

## II. Procedural History and Due Process Concerns

On July 17, 2025, McCormick initiated proceedings seeking the appointment of a Receiver, with a return date approximately 21 days later. On or about July 23, 2025, I was served with over 500 pages of filings. Shortly thereafter, an emergency motion was filed requiring a response within two days and scheduling a hearing for August 1, 2025. This eventually claiming GBL and Greg are fraud and fraudster on over 9 times by Mr. Christopher Schueller, officer of the court.

Due to the volume and timing of these filings, it was not feasible to retain counsel within the allotted timeframe. Multiple attorneys advised me to file for Chapter 13 personal bankruptcy protection, which I did. That filing triggered an *automatic stay* pursuant to federal law under the jurisdiction of the Honorable Judge Patrick G. Radel.

Notwithstanding the automatic stay, the August 1, 2025 hearing proceeded in my absence. I was therefore unable to present any defense on behalf of myself or GBL. The Court subsequently ruled against both the company and me personally.

During the same proceeding, I was removed as a party to the litigation, and the matter proceeded without my participation thereafter.

## III. Actions of the Receiver

Following the appointment of the Receiver, Mr. Dotan Y. Melech, actions were taken that, in my view, exceeded the scope of his authority. In my and others' opinion the receiver broke the law.

Representatives of the Receiver entered GBL's premises, altered physical locks to gain access, assumed control over company bank accounts, and directed access to company servers through a former IT subcontractor, Mr. Tom Morgan.

From the outset, Mr. Melech repeatedly demanded that I relinquish proprietary intellectual property, consisting of approximately 3.2 terabytes of data developed over a 40-year period, as well as ownership of real property located at 356 Hudson River Road. These demands were accompanied by statements to the effect that failure to comply would result in the shutdown of the company; and other insinuations relative to physical threats.

These communications caused significant distress to my staff and family members, including my wife and personal assistant, who was present during certain interactions.

## IV. Server Access and Damage

Approximately one month after access was granted to the Receiver's representatives, and beyond the initial 45-day receivership period, unauthorized activity to extract IP owned by me occurred on GBL's servers during the night of September 24–25, 2025.

Software designed to rapidly extract data was installed by an individual employed with the Receiver, after which the servers were subjected to sustained activity that resulted in system failure within approximately two hours of consistent 'pounding of the server'. Activity reportedly continued for an additional 20 hours thereafter. The Receiver retained Mr. Tom Morgan a retired subcontractor, who reported to Mr. Melech that they were attempting to steal the intellectual property owned by Greg Beeche. It appears recently that the 22 hours of pounding the servers destroyed its contents; this according to Attorney Todd A. Ritschdorff, the attorney for Melech, the Receiver.

Subsequently, I was informed by counsel for the Receiver that the servers are now substantially damaged such that the IP may be permanently lost. I have also learned that company email systems and the corporate website have been disabled.

## V. Liquidation of Assets

The Receiver proceeded to liquidate GBL's rental/lease inventory, including approximately $19.5 million in steel and aluminum equipment, ***as scrap*** garnering approximately 5% of its value.

This inventory included a substantial fleet of patented aluminum extrusion ADT systems, totaling approximately 17 miles, (90,000 ln ft.) which historically generated rental income at a rate of approximately $7 per linear foot per month. Based on past utilization, this equipment was capable of generating substantial recurring monthly revenue of over $600,000 per month if fully rented at historical pricing. The receiver apparently decided to sell these assets knowing that the company could not continue without them or be replaced quickly. I have been told by Mr. Melech that all metal ADT aluminum and steel fabrications were sold for Scrap rather than for the true normal value less discounts.

## VI. Valuation and Allegations

The Receiver has represented in writing that GBL was valued at approximately $40 million, while McCormick allegedly settled its claims for approximately $10 million in related proceedings.

Despite these valuations, actions taken by the Receiver have resulted in the effective dismantling of the company and severe financial harm to me personally as well as the creditors of GBL.

Additionally, I have reason to believe that attempts were made to access and appropriate proprietary intellectual property without authorization, as indicated by statements from Mr. Morgan.

## VII. Conclusion

In light of the foregoing, I respectfully request that the Court review the actions taken by the Receiver, including but not limited to the handling of company assets, access to proprietary IP systems, and the circumstances under which these events occurred.

I further reserve the right to seek appropriate relief and to refer certain matters to relevant Legal authorities, as warranted.

Sworn under penalty of perjury by me to the best of my ability

Respectfully submitted,

**Gregory L. Beeche**
Pro Se Litigant

April 29, 2026