# Buchanan

| | |
|---|---|
| **Christopher P. Schueller**<br>412 562 8432<br>christopher.schueller@bipc.com | Union Trust Building<br>501 Grant Street, Suite 200<br>Pittsburgh, PA  15219-4413<br><br>T 412 562 8800<br>F 412 562 1041 |

May 1, 2026

**VIA ELECTRONIC MAIL AND ECF**

Hon. Anne M. Narducci
United States Bankruptcy Court
Northern District of New York
James T. Foley United States Courthouse
445 Broadway, Suite 330
Albany, NY  12207

> **Re:  *McCormick 103, LLC v. Greg Beeche, Logistics, LLC, et al.,***
> **Civil Action No. 25-00944-AMN**
> **Secured Creditor's Response to Text Order dated April 29, 2026 [Dkt No. 123]**

Dear Judge Narducci,

We represent the plaintiff McCormick 103, LLC ("**Secured Creditor**").  The Secured Creditor respectfully requests that the Court declare the Mini Cranes to be the Secured Creditor's collateral and permit the receiver to sell the Mini Cranes without further interference from Greg Beeche ("**Mr. Beeche**").   The Secured Creditor's lien in the Mini Cranes has never been extinguished and should be sold by the receiver along with all the other collateral.

In support of this position, the Secured Creditor makes three arguments which are discussed in more detail below.  These arguments are (i) the Secured Creditor has a lien on all personal property of Greg Beeche, Logistics, LLC ("**GBL**") including without limitation equipment and inventory; (ii) the Mini Cranes should be characterized as equipment and not inventory because GBL was not in the business of selling Mini Cranes or any other equipment; and (iii) even if the Mini Cranes are considered inventory (they are not), the purported sale of Mini Cranes failed to extinguish the Secured Creditor's lien because such a sale was not in the ordinary course of business and was at best incidental to GBL's business.

## 1.  The Secured Creditor has a lien on the Mini Cranes.

There is no requirement under the UCC that each piece of equipment or inventory be separately described in a Security Agreement or UCC-1 filing.  A security agreement and UCC-1 just need to "reasonably identif[y] what is described." UCC § 9-108(a). A lienolder is only required to give notice to third parties of the possible existence of a lien. to  UCC Section 9-504

April 17, 2026
Page -2 -

(Official Comment (2)).  Third parties are then charged with conducting a "reasonable inquiry" into the status of the collateral in question. *In re Oak Rock Fin., LLC*, 527 B.R. 105, 115 (Bankr. E.D.N.Y. 2015). There is no requirement that every piece of equipment or inventory be listed.  In light of this, collateral may be described by category such as "equipment' or "inventory."  UCC § 9-108(b)(2).  Moreover, even a description of "all assets" or "all personal property" is acceptable.  *In the Matter of: Sterling United, Inc.,* 674 F. App'x 19 (2d Cir. 2016) (holding collateral description was sufficient where it unambiguously referred to all of the debtor's assets).

Given the above, there is no question that the Secured Creditor has a duly perfected security interest in all equipment and inventory, including the Mini Cranes.   Under the Security Agreement and UCC-1, the Secured Creditor's collateral includes all personal property including equipment and inventory.  No more detail is required to establish the perfected lien.

**2.  The Mini-Cranes are equipment because GBL was not in the business of selling cranes.**

 "Inventory" is property that is held for sale. UCC § 9-102 (33). "Equipment" consists of assets used in business operations. UCC § 9-102(48). Whether property is classified as equipment or inventory depends on the nature of a company's business and what the company sells.  *Hempstead Bank v. Andy's Car Rental System, Inc.*, 35 A.D.2d 35 (2nd Dep't 1970) (examining whether automobile wholesaler was "in the business of" renting, leasing, or selling cars); *Fin. Fed. Credit, Inc. v. Crane Consultants, LLC*, 21 F. Supp. 3d 264, 273 (W.D.N.Y. 2014), *aff'd sub nom*, 604 F. App'x 38 (2d Cir. 2015) (cranes generally constituted plaintiff's inventory because the crane company was in the business of buying and selling cranes).

Here, GBL was a scaffolding installation company which provided services for a wide range of construction and maintenance projects, including designing, fabricating, installing, and maintaining suspension scaffolds which were used in construction projects on high-rise buildings. It was "in the business" of scaffolding installation. GBL was not in the business of selling cranes.  The GBL website says it all. (www.greg.beeche.com)  Under the "About Us" tab, GBL states with respect to work access systems a/k/a scaffolding:

> GBL provides Work Access systems and support services for a wide range of construction and maintenance projects. Beyond solving unique access problems, high-performance ADT Work Access systems are fundamentally shaping the way the construction industry works.

GBL is not a crane dealer.  Nowhere on GBL's website does GBL offer equipment for sale.  This makes sense because all GBL projects were temporary.  GBL installed scaffolding for a specific job site for a limited period of time.  Then GBL took all the equipment back for use on another project.  GBL was not in the business of selling Mini Cranes or any other equipment.

April 17, 2026
Page -3 -

Beeche has provided no evidence to the contrary (i.e. documentation of crane or equipment sales over an extended period of time or documentation that the cranes were treated for accounting purposes as inventory).  The only other sale of equipment that GBL references in its submissions is the sale of equipment to BrandSafway, however, this sale was consummated by the receiver specifically under the Receivership Order.

The Mini Cranes are equipment.  The Secured Creditor holds a lien on the Mini Cranes. Therefore, the purported sale of the Mini Cranes was not free and clear on the Secured Creditor's lien.

3.   **Even if the Mini Cranes are considered inventory, the alleged sale still did not extinguish the Secured Creditor's lien because the sale was not in the ordinary course of GBL's business.**

Even if the Mini Cranes are inventory (they are not), the alleged sale still did not extinguish the Secured Creditor's lien was still not "in the ordinary course" GBL maintained in their Letter to the Court filed at Dkt No. 115 that GBL "rents/leases equipment as is primarily [their] enterprise." Even if this assertion is true, a one-off sale of equipment is not "in the ordinary course" for a business that rents and leases equipment.

For example, in *Hempstead Bank v. Andy's Car Rental System, Inc.,* the court held that a purchaser of a car from a rental company was not a buyer in the ordinary course of business, because although the cars held were classifiable as inventory, just because something is categorized as inventory does "not mean every sale from inventory is protected thereby." The court held that a sale of cars was "merely incidental" to the nature of the business, thus the sale fell outside the "buyer in the ordinary course" exception. *Hempstead Bank,* 35 App. Div. 2d at 40. Similarly, if GBL was in the business of renting and leasing equipment, this sale would not be encompassed as part of GBL's principal business activities.

Further, courts have held that a buyer's misunderstanding that the seller was in the business of selling does not improve the buyer's position. Antigo Co-op Credit Union v. Miller, 271 N.W.2d 642, 645 (Wis. Sup.Ct. 1978). Therefore, Enclos is not a "buyer in the ordinary course" and does not "take free" of McCormick's lien on the Cranes.

Given the foregoing, the Receiver submits that the Cranes are not inventory under the Security Agreement, the NY UCC, and under applicable law.

Under UCC §§ 9-320 and 1-201(9), a "buyer in the ordinary course" takes goods free of certain security interests if the sale aligns with usual practices. The  UCC defines "buyer in the ordinary course of business" as "a person that buys goods in good faith, without knowledge

April 17, 2026
Page -4 -

that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person **comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices**." UCC § 1–201(9) (emphasis added). Excluded from this definition are persons who acquire goods "as security for or in total or partial satisfaction of a money debt." *Id.* The UCC provides the example of a person who sells oil, gas, or other minerals at the wellhead or minehead; that person is a person "in the business" of selling goods of that kind." *Id.*

Courts have held that a debtor must show that the course of dealing or course of performance between the debtor and third parties impliedly modified or supplemented an agreement with a secured creditor, specifically, a prohibition against sales other than in the ordinary course of business. *Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31174470 at *21 (S.D.N.Y. Sept. 26, 2002). While, GBL has maintained that they are primarily in the business of renting/leasing or buying equipment, this is clearly not the case, as they do not historically have a course of dealing selling equipment to third parties. The Cranes were primarily used in assist GBL in installing scaffolding. The Cranes are not and have never been held by GBL "for lease or sale." Thus, the Cranes are not in fact "inventory."

Finally, the Secured Creditor makes a plea to the Court to address the constant barrage of meritless letters and motions filed by Gregory Beeche ("**Mr. Beeche**") on behalf of GBL. Mr. Beeche's constant harassment of the receiver needs to come to an end. As an equity owner in GBL, Mr. Beeche has no chance of recovery. The debts of GBL exceed $13 million and the recovery from the sale of GBL assets look like they will yield less than $2 million. Mr. Beeche has no economic interest to protect with respect to GBL. Yet Mr. Beeche's constant harassment drives up the costs of this receivership and eats away from the Secured Creditor's recovery. To address this, the Secured Creditor respectfully requests the court to at least deny outright any request for relief by Mr. Beeche on behalf of GBL. Mr. Beeche should not be permitted to represent a limited liability company in Court. He is not an attorney. *Lattanzio v. COMTA*, 481 F.3d 137 (2d Cir. 2007) (holding that LLC could appear in federal court only through licensed attorney, regardless of fact that LLC had sole member and that its sole member sought to represent it).

The Secured Creditor thanks the Court for its time and attention to this matter.

Respectfully submitted,

April 17, 2026
Page -5  -

**BUCHANAN INGERSOLL & ROONEY PC**

By: */s/ Christopher P. Schueller*
Christopher P. Schueller

cc:   Gregory L. Beeche
Parties-in-Interest via ECF Notification