**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF NEW YORK**

McCORMICK 103 LLC,

> | |
> |---|
> | U.S. DISTRICT COURT – N.D. OF N.Y. |
> | **FILED** |
> | **May 29 - 2026** |
> | John M. Domurad, Clerk |

*Plaintiff,*

**Civil Action No.: 1:25-cv-00944 (AMN)(CBF)**

v.

**GREGORY BEECHE'S RESPONSE TO THE
RECEIVER'S REPORT [ECF NO. 134-135]**

GREG BEECHE LOGISTICS
LLC, et al.,

*Defendants.*

**TO THE HONORABLE ANNE M. NARDACCI, UNITED STATES DISTRICT JUDGE:**

Defendant Gregory Beeche, appearing *pro se*, respectfully submits this Response to the Receiver's Report dated [Insert Date], docketed as ECF No. 134 (the "Report").

My previous files and this submission *pro se* due to the significant logistical and financial difficulties in retaining corporate counsel, as numerous regional firms possess conflicts of interest arising from prior or ongoing representations of Bank of America or New York State regulatory bodies.

While Defendant has acted in continuous good faith to facilitate these proceedings, a review of the Report raises critical concerns regarding the exposure of protected third-party data, potential breaches of non-disclosure agreements, and an apparent failure to maximize receivership asset values to the detriment of creditors and laborers. Accordingly, Defendant respectfully requests that the Court address the following matters:

Your Honor, I am respectfully, asking to reconsider my Contempt charge.

Your Honor, When the receiver came on, I was performing like any time previous, before the pandemic. My personal income although basically stopped; When payments came in, We would decide who to pay; and when my personal debts needed to be paid;

I never changed the methods employed; did not obtain any information or direction from the Receiver; On the contrary; he was very open and gracious. I did not know that I was breaking the rules. The Porsche was broken and being stored elsewhere; I told Brittani Firestone the person who first came to our plant.

## I. The Protection and Excision of Employees' Personally Identifiable Information (PII) and Protected Health Information (PHI)

The Report indicates that data recovered from the corporate server—currently being marketed to prospective third-party buyers—contains highly sensitive, confidential personnel records. As noted in Exhibit 5, page 7, this data includes human resources records, employee certifications, photo identifications, payroll records, 401(k) documentation, and commercial health insurance records (CDPHP). Exhibit 5, page 8 explicitly acknowledges that these accounting files contain Personally Identifiable Information (PII), noting that "[a]ny disclosure of this data should be reviewed with counsel prior to sharing with prospective buyers."

Defendant maintained this information strictly within the ordinary course of business to comply with federal and state labor, tax, and benefits laws. Throughout decades of operation, Defendant implemented rigorous cybersecurity protocols to shield this data from foreign and domestic cyber-threats.

Allowing the wholesale transfer or unredacted exposure of this database to commercial prospective buyers creates an severe and unwarranted risk of identity theft, data breaches, and industrial misuse. Furthermore:

1. **Statutory Non-Disclosure Violations:** Under New York General Business Law § 399-ddd(2), the unrestricted disclosure of Social Security numbers is strictly prohibited. Standard redaction protocols may prove insufficient given the volume, depth, and chronological span of the historical payroll files stored on the server.
2. **Health Information Privacy:** The inclusion of CDPHP healthcare documentation introduces sensitive Protected Health Information (PHI). While the Health Insurance Portability and Accountability Act (HIPAA) privacy rules primarily govern traditional covered entities, the judicial sale of unredacted medical histories and health plan enrollments violates fundamental privacy expectations and invites collateral litigation.

If this sensitive data is mishandled, it exposes the receivership estate and individual parties to significant administrative liability and future private causes of action from affected current and former employees.

**Relief Requested:** Defendant respectfully requests that the Court order the Receiver to scrub, excise, or permanently remove all employee PII, Social Security numbers, and health care data from any digital assets or servers prior to opening them to prospective buyers or finalizing a sale.

## II. Breach of Contractual Non-Disclosure Agreements (NDAs) with Corporate Clients

Over more than 40 years in operation, Defendant cultivated long-standing relationships with developers, contractors, and building owners. In the ordinary course of business, Defendant entered into strictly binding Non-Disclosure Agreements (NDAs) regarding proprietary engineering methods, architectural data, structural blueprints, and project-specific security protocols.

The wholesale marketing of the server's contents threatens to inadvertently broadcast proprietary client data, potentially placing Defendant and the receivership estate in direct breach of these active NDAs. On August 29, 2025, Defendant acted in absolute good faith by creating specialized credentials to grant the Receiver remote access to the server, expecting that a rigorous data-filtering mechanism would be utilized.

Unchecked exposure of client-end structural or financial data invites significant third-party liability and high-stakes litigation from commercial real estate owners and primary contractors.

**Relief Requested:** Defendant respectfully requests that the Court direct the Receiver to establish a formal review protocol to isolate and withhold contractually protected client data and proprietary design plans from the public or unvetted bidders.

## III. Inadequate Asset Maximization and Lack of Transparency in the Sale Process

A primary duty of a court-appointed Receiver is to maximize the value of the receivership estate to satisfy legitimate creditors. The Report describes an incredibly compressed sales window that resulted in an egregious depreciation of tangible equipment and assets.

Defendant has repeatedly expressed to the Receiver that his primary objective remains the maximum fulfillment of all legitimate corporate debts. However, the current liquidation strategy reflects a clear disregard for market value:

1. **Deficient Valuation and Fire-Sale Disposals:** The assets were liquidated at nominal prices far below fair market value, failing to benefit the estate or its core creditors.
2. **Lack of Procedural Transparency:** The Report fails to provide adequate disclosure regarding the identities of the purchasing entities who acquired high-value logistics and industrial equipment for nominal sums, undermining the equitable integrity of the liquidation process.
3. **Disregard for Outstanding Labor Claims:** At the inception of this receivership, assurances were made that the liquidation would prioritize unpaid wages owed to the company's workforce. Despite prior counsel establishing a conduit for laborers to submit

claims directly to the Receiver's legal team, multiple former employees report that no substantive efforts have been made to integrate their claims or distribute proceeds to them.

The sale of our rental and plant assets, I asked the Receiver to send the list including: What was sold?; how much was sold? and who purchased what items?, this last item was not answered yet, despite of multiples request.

As this was my 25 years of building the plant; and inventory for leasing. Your honor, I did not receive who purchased these assets; I am personally involved in a project that need our ADT designs and so I am hoping to have our joint venture partner able to buy the necessary GBL ADT equipment; or at least rent the equipment. As you might remember, I submitted the proposal asking your permission for a 4 month stay before auctioning the equipment.

## Conclusion

For the reasons set forth above, Defendant Gregory Beeche respectfully requests that this Court protect third-party employee privacy, shield the estate from contractually driven litigation, and require the Receiver to provide a transparent, maximized accounting of asset liquidations that honors outstanding wage obligations to workers.

Sworn under penalty of perjury to the best of my ability on May 22, 2026

Respectfully submitted,

**Gregory Beeche**
*Pro Se*
65 Smith Road
Mechanicville N.Y.
12118. U.S.A.
518-225-21-52
gregbeeche@gmail.com

**CERTIFICATE OF SERVICE** I hereby certify that on May 22, 2026, a copy of the foregoing Response via electronic file the Court's MFT system.