UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCCORMICK 103, LLC,<br><br>     *Plaintiff*,<br>   v.<br><br>GREG BEECHE, LOGISTICS, LLC; GREG LOGISTICS, LLC; GREGORY L. BEECHE; and NEW YORK STATE DEPARTMENT OF TAXATION,<br><br>and<br><br>"JOHN DOE", "JANE DOE", "DOE ASSOCIATES", and "DOE CORP.", the names being fictitious and being intended to refer to any and all adult natural persons and to all partnerships, corporations and other legal entities having, or which may claim to have, any lien against or interest in the Real Property described in the complaint in this action, other than persons or entities already defendants herein,<br><br>     *Defendants*. | Civil Action No. 1:25-cv-00944-AMN-TWD |

## <u>FINAL ORDER APPOINTING REAL ESTATE RECEIVER</u>

This matter, coming before the Court on the Motion ("**Motion**") at ECF 65 to Amend the Receivership Order dated January 30, 2026 at ECF 63 ("**Business Entity Receivership Order**") to Add Certain Real Property owned by the Defendant Gregory L. Beeche ("**Beeche**") to the property under receivership  filed by McCormick 103, LLC (*"**Plaintiff**"*),  and there being no opposition to the Motion:

The Court, being fully advised and informed on the above-captioned matter and for good cause shown, hereby FINDS that:

A.      This Court has jurisdiction over the subject matter of this case and personal jurisdiction over the parties. Venue is proper in this Court.

B.      This Court is authorized to appoint a receiver for the Real Estate under Fed. R. Civ. P. 66.

C.      William Collucci (the "**Real Estate Receiver**") is an experienced and qualified real estate receiver and property manager and is willing to serve as receiver for the real estate located at 356 Hudson River Road, Waterford, New York 12188 ("**Real Estate**") with all the powers of the current fee estate owner of the Real Estate and as landlord for the Real Estate.

D.      Just cause has been shown that the Motion should be granted and that the Real Estate Receiver should be appointed for the Real Estate.

E.      Although this Order is effective immediately, the term of the Real Estate Receivership contemplated by this Order shall not commence until 12:01 a.m. on the Turnover Date.  The term "**Turnover Date**" shall mean the fifth (5th) business days from the date of entry of this Order.

F.      This Order does not modify the Business Entity Receivership Order except as otherwise expressly noted herein. Dotan Y. Melech ("**Business Entity Receiver**") shall remain in place pursuant to the terms of the Business Entity Receivership Order and shall continue to possess the Real Estate as tenant with no obligation to pay rent to the Real Estate Receiver.  The Business Entity Receiver and Real Estate Receiver shall engage in commercially reasonable efforts to cooperate with one another and work efficiently together and, in the unlikely event that event there is a dispute between them, they shall immediately seek the guidance of the Court to resolve the dispute.

   IT IS THEREFORE ORDERED THAT:

87212131.13

1.      Effective on the Turnover Date, the Real Estate Receiver shall have possession of the Real Estate, the right to receive copies of documents and information as provided for in Sections 6 and 7 below and full power and authority to operate and manage the Real Estate and to conserve the Real Estate. Without limiting the foregoing, the Real Estate Receiver shall have the power and authority to, upon the Turnover Date, and without further approval of the Court:

(a)      secure tenants and execute, modify, and terminate leases for the Real Estate, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same effect as if made by Beeche; provided however that the Business Entity Receiver shall continue to retain possession of the Real Estate while the Business Entity Receivership Order remains enforceable as a tenant and notwithstanding any other term in this Order to the contrary, the Business Entity Receiver shall have no obligation to pay prior or future rent for his occupancy;

(b)      collect the rents, issues, account receivables, insurance claim proceeds, real estate tax refunds, utility deposits, and profits from the Real Estate for any time period, to pay Real Estate related expenditures approved by the Plaintiff, and to collect and disburse security deposits;

(c)      maintain appropriate insurance for the Real Estate against loss by fire or other casualty, which shall include but is not limited to the following coverages, from any insurer or prospective insurer: Real Estate, liability (and excess liability), auto liability, workers compensation, employment practices liability, employer liability, employee dishonesty, business interruption, boiler and machinery, builders risk, construction bonding, environmental, terrorism, other bonding, professional liability, and errors and omissions. The Real Estate Receiver is authorized to continue any current insurance policies in place that are in accordance with the requirements of the Plaintiff's Loan Documents, and the Real Estate Receiver may be added as an

3

additional insured on such policy during the term of the Real Estate Receivership. With Plaintiff's prior written approval, the Real Estate Receiver may purchase such insurance as the Real Estate Receiver deems appropriate and that is in accordance with the requirements of the Loan Documents.  All such insurance policies (i) shall name Plaintiff as an additional insured, as mortgagee, and as loss payee with respect to all casualty policies, and with respect to any insurance purchased by the Real Estate Receiver;

(d)    employ construction managers, general contractors, subcontractors, architects, engineers, consultants, title companies, environmental consultants, asset managers, property managers, leasing agents, administrative support, attorneys, security companies, custodians, janitors, maintenance workers, repairman, contractors, assistants, agents, accountants, and other employees reasonably deemed necessary, appropriate, or desirable to assist the Real Estate Receiver in diligently executing the duties imposed upon the Real Estate Receiver by this Order, including the maintenance and operation of the Real Estate;

(e)    pay taxes which may have been or may be levied against the Real Estate and, if the Real Estate Receiver deems appropriate, contest or appeal any real estate tax assessment or bill relating to the Real Estate;

(f)    establish segregated bank accounts and utilize the tax identification number of Beeche in so doing so long as Beeche continues to own the Real Estate;

(g)    hire or retain any agents necessary or appropriate to do any of the duties listed above without further approval of this Court, including accountants, attorneys, environmental consultants and personnel, brokers, leasing agents, and Real Estate managers (including the leasing and Real Estate management divisions of Pyramid Brokerage Company);

4

87212131.13

(h)     operate the Real Estate under any and all existing agreements currently in place between Beeche and any third party with respect to the Real Estate, as the Real Estate Receiver may determine in the Real Estate Receiver's discretion;

(i)     terminate or enter into vendor or other contracts pertaining to the Real Estate as Real Estate Receiver may determine in its reasonable judgment are necessary, with no further obligation or liability on the part of Beeche or the Real Estate Receiver (including but not limited to not having to pay any termination fees or severance benefits to any laid off or terminated employee) under, or related to, any terminated contract, except that the contracts listed on Schedule A attached hereto shall be assumed by the Real Estate Receiver;

(j)     procure or maintain utility services for the Real Estate, to include but not be limited to gas, steam, electric, water, sewer, trash, phone, cable, internet, and snow removal, without suffering, regardless of the internal policies of any utility provider, the termination of such service or refusal to authorize any new account based upon previous unpaid bills for services rendered prior to the appointment of the Real Estate Receiver or during the term of the Real Estate Receiver, with any and all accounts to be opened in the Real Estate Receiver's name (and any existing accounts shall be closed or be retitled in the name of the Real Estate Receiver and Beeche shall be removed from any further obligation thereunder on account of services rendered or utilities furnished from and after the Turnover Date, with recourse therefor for utility service rendered from and after the Turnover Date to be limited to the assets of the Real Estate Receivership created by this Order) but still utilizing the Beeche's tax identification number, if applicable.

(k)     take possession of all cash and funds derived from the Real Estate belonging to or for the benefit of Beeche in bank accounts (no matter from what time period), whether in the name of the Real Estate, Beeche or his agents or employees;

87212131.13

(l)    manage, operate, lease, and market for lease the Real Estate;

(m)    if directed by the Plaintiff, engage Pyramid Brokerage Company to sell the Real Estate in accordance with applicable federal law; and

(n)    take such other actions as may be reasonably necessary or prudent to manage and operate the Real Estate and to conserve the Real Estate or as otherwise authorized by the Court.

2.    From and after the Turnover Date, the Real Estate Receiver is authorized, without further leave of the Court, to defend or institute and prosecute suits or summary proceedings related to the Real Estate or the duties imposed upon the Real Estate Receiver by this Order including, without limitation, proceedings: (a) for the collection of rents, income, and other amounts (which includes but is not limited to tenants who have vacated their space); (b) for the removal of: (i) any tenant or tenants in default (whether for failure to pay rent or other amounts when due, or otherwise, including violation of the Real Estate rules), (ii) any tenant or tenants whose terms have expired and have not been renewed, or (iii) any other person(s) or entity(ies) unlawfully in possession of the Real Estate; or (c) otherwise related to the Real Estate or the duties imposed upon the Real Estate Receiver by this Order. This Order shall act as notice to all tenants of the Real Estate that the Real Estate is now under the control of the Real Estate Receiver. This provision does not include any proceedings or actions related to the Business Entity Receiver's possession of the Real Estate or his obligations under the Business Entity Receivership Order.

3.    From and after the Turnover Date, the Real Estate Receiver may, without an order of the Court, delegate managerial functions to a person in the business of managing real estate of the kind involved who is financially responsible and prudently selected (including Pyramid Brokerage Company). To the extent the Real Estate Receiver receives sufficient receipts from the

6

Real Estate, and except to the extent ordered otherwise by the Court, the Real Estate Receiver, from and after the Turnover Date:

(a)     shall maintain the existing casualty and liability insurance required in accordance with the Loan Documents at the time the Real Estate Receiver took possession, or shall find more cost-effective replacement insurance of comparable coverage with replacement insurers in compliance with the provisions of Section 1(c) above;

(b)     shall use reasonable efforts to maintain the Real Estate in at least the same condition as existed at the time the Real Estate Receiver took possession, excepting reasonable wear and tear and damage by any casualty, and shall cause compliance with the landlord's obligations under the leases of the Real Estate;

(c)     shall apply receipts in accordance with the provisions of this Order;

(d)     shall make other repairs and improvements necessary to comply with building, life-safety and other similar codes or with such other contractual obligations as affect the Real Estate, however, Real Estate Receiver must obtain Plaintiff's prior written approval;

(e)     may take such other actions as may be reasonably necessary or prudent to manage and operate the Real Estate and to conserve the Real Estate, or as otherwise authorized by the Court, provided sufficient funds are available; and

(f)     may in its discretion pay any or all other outstanding obligations to suppliers or vendors as of the Turnover Date incurred in arm's length transactions who, prior to the Turnover Date, supplied materials, business supplies or labor to or for the benefit of the Real Estate, but only to the extent the Real Estate Receiver shall determine, in its sole judgment, that it is prudent to do so in order to maintain the business relationships with such suppliers or vendors for the benefit of the Real Estate, provided sufficient funds are available from the Real Estate, and without, by so

7

87212131.13

doing, making the Real Estate Receiver liable for any other antecedent debts relating to the Real Estate.

4. Irrespective of whether the Real Estate Receiver decides to continue the services of any current employees, agents or other personnel with respect to the Real Estate, neither the Real Estate Receiver nor any person or entity engaged by the Real Estate Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior to the Turnover Date or relate to agreements entered into by the Beeche with its employees, agents or other personnel dated prior to the Turnover Date, which claims include severance payments, unpaid but accrued wages, unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime, and any other liabilities related to unemployment or worker's compensation claims. Notwithstanding the above, and for the avoidance of doubt, any leasing commission payment obligations of the Beeche which were earned before the Turnover Date, but which are payable after the Turnover Date, shall be paid by the Real Estate Receiver.

5. The liability of the Real Estate Receiver is and shall be limited to the assets of the Real Estate Receivership, and neither the Real Estate Receiver nor any person or entity engaged by the Real Estate Receiver hereunder shall be personally liable for any duly authorized actions properly and lawfully taken pursuant to this Order.

6. Within 10 business days of the entry of this Order unless otherwise indicated, Beeche and its agents shall provide or make available to the Real Estate Receiver the following, to the extent such items and things exist and are in Beeche's possession or control:

(a) Beeche's federal, state, and municipal employer and tax identification numbers;

8

87212131.13

(b)    Copies of any and all service contracts pertaining to the Real Estate which are currently in effect;

(c)    Copies of any and all existing leases pertaining to the Real Estate and lease abstracts with respect to such existing leases;

(d)    A list of any and all bank accounts in the name of the Real Estate, Beeche, including the name or names of the institutions in which the accounts are located, any and all account numbers for each account, and monthly statements for each such account;

(e)    Prior to the Turnover Date, a complete set of keys and all security and access codes and cards to the Real Estate, and a schedule (including full contact information) identifying, to Beeche's knowledge, each person or entity (including security companies, municipal and governmental agencies and utility companies), who currently has one or more keys or access cards to the Real Estate or who has knowledge of any access codes thereto;

(f)    All computers and copiers currently used in connection with the existing accounting systems for the Real Estate;

(g)    The transfer of (i) all electronic files and electronic data from the MRI accounting system used in connection with the Real Estate, (ii) all electronic files and electronic data related to the Real Estate including but not limited to building operations and maintenance from the Computerized Maintenance Management System, work order systems and tenant handbook, and (iii) all electronic files and electronic data for all common area maintenance reconciliations for each tenant for the past three years including without limitation all workbooks, calculations, spreadsheets and other supporting documentation; and

(h)    As soon as practicable and within such period of time as agreed to by the Real Estate Receiver and Beeche, any and all other documents relating to the Real Estate as

87212131.13

specifically and reasonably requested by the Real Estate Receiver which may be necessary or pertinent to the Real Estate Receiver's management, maintenance, operation or leasing of the Real Estate (to the extent not subject to the attorney/client privilege or other privilege and to the extent not containing Confidential Information).

Beeche's obligation to make available information under Section 6(h) above shall be continuing until the earlier of (i) six (6) months from the Turnover Date or (ii) the date of a Real Estate Receiver's sale, foreclosure sale, other execution sale or the acceptance of a deed in lieu of foreclosure with respect to the Real Estate.

7.    Within 15 business days of the entry of this Order unless otherwise indicated, Beeche and its agents shall provide or make available to the Real Estate Receiver the following, to the extent such items and things exist and are in Beeche's possession or control:

(a)    All open invoices for services or goods relating to the Real Estate;

(b)    In addition to the materials identified above, to the extent not subject to the attorney/client privilege or other privilege and to the extent not constituting information Confidential Information as hereinafter defined, (i) copies of any material agreements to which the Real Estate is or may be subject, (ii) a summary of amounts received from the tenants of the Real Estate, from the time Beeche took ownership of the Real Estate to the date of entry of this Order, (iii) copies of documents evidencing all liens or other monetary encumbrances on the Real Estate, (iv) current Real Estate tax bills, current assessment notices, and pleadings relating to any pending tax appeals (and appraisals submitted to the relevant taxing authorities or the applicable municipal body or court in connection with current pending tax appeals), (v) certificates and/or policies with respect to current insurance of all types for Beeche and tenants (including but not limited to liability, Real Estate, excess liability, auto liability, boiler and machinery, business interruption,

10

professional liability, employee dishonesty, builders risk, construction related insurance and workmen's compensation) related to the Real Estate, (vi) copies of all current maintenance and service contracts to which Beeche is a party relating to the Real Estate, (vii) copies of all outstanding invoices for services at the Real Estate, (viii) copies or originals of all tenant files with respect to existing leases, including but not limited to correspondence, leases, lease abstracts, CAM billing statements with respect to those leases from the time Beeche took ownership of the Real Estate to the date of entry of this Order, in each of the foregoing cases to the extent not subject to the attorney/client privilege or other privilege and to the extent not constituting Confidential Information, (ix) a current and accurate copy of all electronic information for items related to tenant escalations/reconciliations from the time Beeche took ownership of the Real Estate to the date of entry of this Order, (x) the current rent roll utilized by the Beeche in the operation of its business, and (xi) all marketing information (in hard copy and electronic format) currently used by Beeche in the operation of its business, including but not limited to brochures, photographs (including aerial), maps, and signage; notwithstanding the above, to the extent Beeche is subject to certain confidentiality agreements with respect to certain financial information concerning certain tenants and tenant guarantors at the Real Estate (the "**Confidential Information**"), Beeche will deliver such Confidential Information to Plaintiff and Plaintiff shall keep such Confidential Information confidential and use such Confidential Information only for the benefit of the Real Estate.

(c)     Any and all insurance loss histories since Beeche acquired ownership of the Real Estate and documentation relating to any currently unresolved insurance claims with respect to the Real Estate (to the extent not subject to the attorney/client privilege or other privilege and to the extent not constituting Confidential Information).

11

87212131.13

8.    Beeche shall, at all times after the entry of this Order:  (a) reasonably cooperate with the Real Estate Receiver in the transition of the management of the Real Estate to the Real Estate Receiver on the Turnover Date and (b) timely respond to all reasonable requests for information in its possession or under its control relating to the management, leasing or operation of the Real Estate made by the Real Estate Receiver, except to the extent that any request represents information subject to the attorney/client privilege, other privilege or such information is Confidential Information.

9.    If the Plaintiff or the Real Estate Receiver desire Beeche's cooperation in the carrying out of the duties of the Real Estate Receiver under this Order, and such cooperation is not already provided for in Sections 6 through 8 above, the Real Estate Receiver or Plaintiff may request that the Court order such  cooperation, through a separate and subsequent order of the Court on such terms as may be set out in such separate and subsequent order of the Court, it being understood that nothing in this Order shall constitute a waiver of Beeche's right to raise objections to any motion seeking Court approval of any such separate and subsequent order.

10.    So long as any part of the Real Estate remains in the Real Estate Receiver's possession, the Real Estate Receiver may in his discretion  prepare and file with the Court a full and complete report, under oath, setting forth all receipts, disbursements, cash flow, and all changes in the assets in the Real Estate Receiver's charge, or interests in or claims against the assets, that have occurred.

11.    In the event Plaintiff advances funds pursuant to the terms of the Loan Documents (the "**Advances**") to the Real Estate Receiver during the pendency of the Real Estate Receivership to enable the Real Estate Receiver to perform its duties hereunder, such Advances shall be considered part of the indebtedness secured by the lien of the Mortgage.

12

12.     The Real Estate Receiver may at any time file a motion requesting that it be exonerated, discharged, and released from all its appointments as Real Estate Receiver.

13.     The Real Estate Receiver shall not have any responsibility for the preparation or filing of any tax return of any kind for Beeche or its direct or indirect members.

14.     From and after the Turnover Date, neither Beeche nor anyone associated therewith or acting under Beeche's authority or control shall:

(a)     possess or manage the Real Estate in any way or interfere with the activities of the Real Estate Receiver authorized by this Order;

(b)     collect, withdraw, or transfer, in any way, funds or revenue derived from operation of the Real Estate from and after the Turnover Date;

(c)     remove or destroy any tangible personal Real Estate from the Real Estate;

(d)     terminate or cause to be terminated any (i) license, (ii) permit, (iii) lease, (iv) contract relating to the maintenance, operation, leasing or management of the Real Estate, (v) insurance policy, or (v) agreement relating to the relating to the maintenance, operation, leasing or management of the Real Estate except as otherwise expressly provided in this Order and except that Beeche shall have the right to terminate, and be permitted to terminate, any license, permit, contract or insurance policy or agreement as to which (i) the Real Estate Receiver have agreed, in writing, shall not be assumed by the Real Estate Receiver or (ii) the Real Estate Receiver does not pay any amounts payable with respect thereto accruing from and after the Turnover Date as and when due; or

(e)     otherwise interfere with Real Estate Receiver's possession or operation of the Real Estate or the other activities of the Real Estate Receiver authorized by this Order.

15.     Receipts received from the operation of the Real Estate by the Real Estate Receiver shall be applied in the following order of priority:

(a)     to payment of the Real Estate Receiver's fees as to which the Real Estate Receiver is entitled to payment pursuant to the terms of this Order;

(b)     to payment of authorized insurance premiums and to the payment of taxes and Center City District assessments on the Real Estate (to the extent the same are not paid directly by the Plaintiff)[1];

(c)     to payment of reasonable and necessary expenditures associated with the Real Estate that have accrued after the Turnover Date) and any other amounts which the Real Estate Receiver is entitled to incur, or be reimbursed for, under the terms of this Order which are not described in subsections (a) through (b) above;

(d)     to payment of the obligations owed to Plaintiff under the Loan Documents for the Real Estate, to the extent funds remain after payment of the foregoing; and

(e)     To the extent all amounts due and owing to Plaintiff under the Loan Documents have been paid in full, any excess funds shall be held by the Real Estate Receiver for payment to the Beeche upon termination of the Real Estate Receivership;

16.     Beeche, its agents and employees, shall turn over to the Real Estate Receiver, within 10 business days from the Turnover Date, all cash security deposits made under any lease of the Real Estate or any portion thereof and all letters of credit which secure obligations of any tenant under a lease for the Real Estate or any portion thereof.

---

[1] Plaintiff, at its option, may fund expenses (a) into a reserve maintained by the Real Estate Receiver which shall be used to pay these items when due or (b) into a Tax and Insurance Escrow Account which shall be used by the Plaintiff to pay these items when due.

14

87212131.13

17.     The Real Estate Receiver shall post a bond of $ _____ (zero if left blank), which shall be an expense of the Real Estate Receivership.

18.     The Real Estate Receiver shall be paid a monthly fee of $2,500.00 for Real Estate Receivership services The Real Estate Receiver may also be reimbursed from the Real Estate Receivership estate for the cost of the Real Estate Receiver's bond required hereunder and for any out-of-pocket costs and expenses which are approved by Plaintiff and incurred outside the ordinary course and scope of operating, leasing and managing the Real Estate. The compensation set forth in this paragraph shall be the sole compensation payable to the Real Estate Receiver and any Real Estate manager acting under its control without further order of the Court, notwithstanding any amount of monies that may be distributed by the Real Estate Receiver to Plaintiff or any other person or entity in the course of the Real Estate Receivership.  This limitation does not apply to sale brokerage fees which are approved by the Plaintiff.

19.     Payment of the amounts set forth in the immediately preceding paragraph may be made utilizing funds derived from operations of the Real Estate or from any funds that may be advanced by Plaintiff (in its sole discretion) as reasonable and necessary costs for maintaining and preserving the Real Estate pursuant to the Mortgage.

20.     No person or entity may file suit against the Real Estate Receiver, in its capacity as Real Estate Receiver, or the Real Estate Receiver's agents, unless otherwise authorized in advance by this Court; provided, however, that no prior Court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

21.     The Real Estate Receiver, and those agents and any Real Estate manager and leasing agent acting under its control, shall have no liability in connection with any obligations owed by Beeche to its creditors on account of obligations accruing prior to the Turnover Date, and

15

87212131.13

no creditor of Beeche, other than Plaintiff, shall seize or attempt to seize any Real Estate, including the Real Estate, delivered to the Real Estate Receiver hereunder and no creditor, including any utility company, shall act to terminate any existing service either (a) as a means of attempting to collect an obligation of Beeche which accrued prior to the Turnover Date or (b) on account of an obligation of Beeche accruing prior to the Turnover Date.

22.    The Real Estate Receiver, and those agents, and any Real Estate manager and leasing agent acting under its control, shall have no personal liability in connection with their conduct in the course of this Real Estate Receivership, except for claims due to willful misconduct.

23.    The Real Estate Receiver may be removed upon 15 calendar days written notice by Plaintiff that Plaintiff desires such removal, with a copy of such notice lodged with the Court and Beeche, or upon an order of the Court, in which event the Court shall appoint a substitute Real Estate Receiver to be recommended by Plaintiff.

24.    Nothing contained in this Order shall be construed as obligating the Real Estate Receiver to advance its own funds in order to pay the costs and expenses of the Real Estate Receivership that have been approved by Plaintiff and the Court.

25.    The Real Estate Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Real Estate Receiver to properly fulfill its duties.

26.    If there are any bonds, they shall be canceled, and the Real Estate Receiver shall be discharged, upon the termination of this Real Estate Receivership and the Court's approval of the Real Estate Receiver's final accounting.

27.    Except to the extent, if any, provided by the express terms of this Order, the entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff,

16

87212131.13

Beeche (or any guarantor of the Loan) under the Loan Documents or under applicable law.  For the avoidance of doubt, all holders of the notes secured by the Mortgage shall be bound by, and subject to the terms of, this Order applicable to the Plaintiff.

28.    The entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and Beeche, and the Real Estate Receiver shall abide by the terms of any such consensual resolution.

29.    Any action of the Real Estate Receiver authorized in this Order shall require the consent of Plaintiff if and when such action, if undertaken by Beeche, would require Plaintiff's consent or authorization under any of the Loan Documents.

30.    Plaintiff shall not become a mortgagee-in-possession as a result of this Order, and neither Plaintiff nor the Real Estate Receiver shall become responsible for any debts or obligations relating to the Real Estate incurred prior to the Turnover Date, including assessments, real estate taxes, environmental obligations, or any other obligations.  Plaintiff is not required to advance monies to cover operating deficits, and the Real Estate Receiver does not assume any personal liability for any obligations of the Real Estate or Beeche or any of its respective agents.

31.    Any utility company providing services to the Real Estate, including gas, electricity, water, sewer, trash collection, telephone, communications, or similar services, is prohibited from discontinuing service to the Real Estate based upon unpaid bills incurred by Beeche for service rendered prior to the Turnover Date. Further, such utilities are prohibited from demanding that the Real Estate Receiver deposit funds in advance to secure such services.

32.    Except to the extent, if any, provided by the express terms of this Order, nothing set forth herein is intended and shall not be deemed to modify, limit, release, reduce, or waive any of Plaintiff's or Beeche's (or any other party's) rights, remedies, or privileges under the Loan

Documents, or at law or in equity, all of which are hereby specifically reserved, including any rights or remedies Plaintiff may have to foreclosure of the Real Estate.

33.    The Real Estate Receivership created by this Order shall terminate upon entry of an order of the Court terminating the Real Estate Receivership, and, without limiting other grounds on which this Real Estate Receivership estate may be wound up and terminated, if Beeche pays in full all amounts due and owing to Plaintiff under the Loan Documents, then the Real Estate Receivership estate shall be wound up and terminated within a reasonable time after such payment in full.

BY THE COURT:

Dated: _____    _____
                                   United States District Judge

4923-3701-5983, v. 3

18

87212131.13